UNITED STATES, Appellee

v

DALE A. NELSON, Sergeant, U. S. Air Force, Appellant

17 USCMA 620, 38 CMR 418

No. 20,981

June 28, 1968

*Major Walter G. Fenerty* argued the cause for Appellant, Accused. With him on the brief was *Colonel Dwight R. Rowland.*

*Captain Donald B. Strickland* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

### Opinion of the Court

QUINN, Chief Judge:

The accused was arraigned before a general court-martial on four specifications alleging violations of the Uniform Code of Military Justice. He pleaded not guilty, but was found guilty as charged and sentenced to a bad-conduct discharge, confinement at hard labor for twelve months, and accessory penalties. On this appeal, he

**621**

challenges the validity of the several findings of guilty upon different grounds.

Under specification 1, Charge I, the accused was convicted of striking a superior officer who was then in the execution of his office. The accused contends the evidence is insufficient to support the finding that the officer was in the execution of his office at the time of the assault. The record indicates the accused consumed a substantial amount of liquor at a "farewell" party at his off-base residence. Apparently, while the affair was still in progress, the accused and a Sergeant Baine walked to a service station near the house. They were dressed in fatigues. At the station, the accused and his companion were observed by Captain Russell Barnes G. Darden, a pilot at nearby Pope Air Force Base, North Carolina, who was dressed in civilian clothes and was present at the station as a customer. In his opinion they had been drinking. Over a period of time he saw them do a number of things, including throwing an object at a passing truck and lying down in the roadway. When a "small crowd had gathered," the Captain "felt . . . [he] had to do something." He approached the airmen, identified himself as an officer at the air base, and attempted to induce them to return to the base or their quarters to avoid getting into further "trouble." He succeeded in escorting them about "70 feet down the road," when the accused suddenly "proceeded to hit" him. Captain Darden blocked most of the blows and "threw" the accused to the ground. Although Baine had attempted to help him with the accused, Darden had been told the two were "great friends." Consequently, "not sure of . . . [Baine's] position," Darden retreated to the service station. The airmen followed. The owner of the station told the accused to leave because he was causing "a disturbance." Ostensibly offering to shake hands with the Captain, the accused grabbed him and "started punching again." Darden succeeded in subduing the accused, and Baine "grabbed" the ac-

cused to "get him home." At trial, Government counsel contended that Captain Darden was in the execution of his office because he was engaged in correcting disorderly conduct of subordinates when struck by the accused. This theory was submitted to the court members with appropriate instructions. The appellant challenges the correctness of the argument and the submission.

Article 7(c), Code, supra, 10 USC § 807, confers upon commissioned and noncommissioned officers authority to quell disorders among persons subject to the Uniform Code. The accused contends this authority is merely a codification of the common-law power of an ordinary citizen to suppress an affray. See Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, at pages 587–588. As he views the statute, exercise of authority to suppress is not performance of a military duty, but exercise of a right or privilege inherent in a status. Distinguishing, as we did in United States v Arthur, 8 USCMA 210, 211, 24 CMR 20, "the rights and the obligations of a person as an officer . . . [and] his performance of a governmental function," the accused argues that Captain Darden was not performing a military function at the time of the assault, since the incident occurred when the accused and the Captain were in an "off duty" period. Consequently, he concludes that Darden was not in the execution of his office. Cf. United States v Milldebrandt, 8 USCMA 635, 25 CMR 139. The argument gives too narrow a meaning to the concept of being in execution of office. As the discussion in paragraph 169a, Manual for Courts-Martial, United States, 1951, points out, one is in the execution of his office "when engaged in any act or service required or authorized to be done by him by statute, regulation, the order of a superior, or military usage." Although the accused argues that the definition approaches an impermissible extreme of indefiniteness, he concedes that execution of office includes performance of a govern-

mental function. We need not explore the intricacies of the argument. Suffice it for present purposes to note that disorder among persons in the military service can have numerous adverse consequences to the military establishment, whether the disorderly persons are on or off base, or on or off duty. An officer of an armed force acting to terminate disorder among subordinates of his force because of the deleterious effects the disorder might have upon the discipline or the credit of his service is discharging a military function, not merely relying upon, or demanding recognition of, his status as an officer. United States v Castro, 28 CMR 760, petition denied, 11 USCMA 770, 28 CMR 414. Winthrop, the eminent legal historian, observes that "any officer engaged in quelling a fray or disorder . . . would properly be regarded as 'in the execution of his office.'" Winthrop, *op. cit.*, at page 571. We conclude, therefore, that there is ample evidence to support the court-martial's finding that Captain Darden was in the execution of his office at the time he was assaulted by the accused.

Two assignments of error attack the validity of the findings of guilty of Charge III. The specification of the charge alleged the accused resisted lawful apprehension by an Air Force security officer. It is contended that the apprehension was not authorized in law and, if so authorized, was illegal in its execution.

According to the evidence, Captain Darden reported the assault upon him to the Air Security office. In about an hour, First Lieutenant Paul Edward Nenner and Sergeant Herbert L. Thacker, both of the security police, ascertained that the accused was at home and proceeded there to arrest him for the alleged offense. On arriving at the house, they spoke to another airman who lived there with the accused, and who answered their knock at the door. In response to their request, the airman went to get the accused. He returned to say the accused was asleep, and he was unable to wake him. He invited the officers to "come in the house" to try to awaken the accused themselves. The officers found the accused in a bedroom at the end of a hall. When their initial efforts failed to awaken the accused, two ammonia capsules were broken open and held "under his nose." These succeeded in rousing the accused. Lieutenant Nenner then identified himself as a security officer, and informed the accused he was apprehending him "for the alleged offense of assaulting an officer." In obscene language, the accused told him to leave the room. He jumped out of bed and began to fight with the police officers. He was "struggled to the floor" and handcuffed.

Appellate defense counsel contend that a police officer's decision to apprehend an individual upon the basis of a complaint alleging an offense contemplates "the exercise of discretion"; they further contend the exercise of that discretion was abused in this case because the accused was apprehended solely in conformity with "the normal procedure for a complaint that was made against" the accused. Strong support for the argument is sought in a general observation of this Court that confinement before trial should be imposed only to insure the accused's continued presence in circumstances where it appears likely that he might be "tempt[ed] . . . to take leave of his surroundings." United States v Bayhand, 6 USCMA 762, 768, 21 CMR 84. Passing over certain infirmities in the argument, and assuming *arguendo* that a mandatory policy to arrest every individual suspected or accused of an offense is impermissible, the evidence provides ample justification for the apprehension of this accused.

A military police officer has authority to apprehend a person subject to the Uniform Code, "upon ▮▮▮▮▮ ▮ reasonable belief that an offense has been committed" by him. Article 7(b), Code, supra. Here, the report of the assault was not made by an unnamed or unknown informant, but directly by the victim. It was made immediately after the alleged assault. None

of the surrounding circumstances cast doubt upon the truthfulness of the complaint. Sufficient probable cause existed, therefore, to believe that the accused had committed the offense. United States v Herberg, 15 USCMA 247, 35 CMR 219. The offense charged was one of the most serious military type offenses. Table of Maximum Punishments, Manual for Courts-Martial, supra, paragraph 127c. In addition, the accused was off the base and, to that extent, not under direct military control. Returning him to such control impresses us as being sensible and appropriate. Assuming, without deciding, that a police officer's determination to apprehend the perpetrator of a serious offense is subject to judicial review, we conclude that the apprehension of accused was not an abuse of discretion.

Turning to the manner in which the apprehension was accomplished, the accused contends there was a shocking lack of propriety and conscience in the tactics used by the police officers. See Rochin v California, 342 US 165, 96 L ed 183, 72 S Ct 205 (1952); Kremen v United States, 353 US 346, 1 L ed 2d 876, 77 S Ct 828 (1957). In our opinion, no unreasonable procedures or measures were employed.

Before going to the accused's residence, the police officers telephoned and were informed he was ■■■■■ present. When they arrived at the premises, they knocked, and entered only on invitation of the co-tenant. True, the entry was made in the nighttime, but it was only about one hour after the commission of the offense. Assuming that time of night is a factor in determining the reasonableness of an arrest (see Sabbath v United States, 380 F2d 108 (CA9th Cir) (1967)), the hour was indeed reasonable, both in terms of the clock and in relation to the time of the offense. Cf. Rule 41(c), Federal Rules of Criminal Procedure. Nor do we perceive anything shocking or unconscionable in the use of ammonia capsules to awaken the accused. These capsules

were merely broken, and held "under his nose." No part of the accused's person was invaded, and rather than dulling his mental faculties, the ammonia brought him to full consciousness. See United States v Miller, 15 USCMA 320, 35 CMR 292. We conclude, therefore, that the methods used to accomplish the accused's apprehension did not make the apprehension illegal.

Appellate defense counsel contend that the record of trial contains evidence which, if believed, ■■■■■ would indicate the accused resisted apprehension because he honestly believed it was unlawful. From that premise, counsel argue that the law officer erred to the accused's prejudice by failing to instruct the court members that such belief was a defense to several of the charges. The Government, however, contends there is no evidence to require an instruction. Cf. United States v Long, 7 USCMA 265, 22 CMR 55. We agree with the Government. The accused's own testimony indicates no such belief; and no evidence of it appears in the testimony of the witnesses for the prosecution, either directly or by fair implication. What does appear is that the accused was fully conscious of the presence of the police officers; that he was advised he was being apprehended "for the alleged offense of assaulting an officer"; and that he "jumped out of bed" and struck at the officers until he was "struggled to the floor." Assuming the accused believed the complaint against him was unjustified, there is nothing in the evidence to indicate in the slightest degree that he believed the police officers did not have probable cause to credit the report, or had no authority to apprehend him on the basis thereof. Instruction is not required on an issue unsupported by evidence in the record of trial. United States v Ledlow, 11 USCMA 659, 29 CMR 475.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.