UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald SIMON, Defendant-Appellant.

No. 16776.

United States Court of Appeals
Seventh Circuit.

April 15, 1969.

As Modified on Denial of Rehearing
May 14, 1969.

were agents. When Simon admitted his identity, the agents told him he was under arrest. He told the agents he was not "going anywhere" with them and struck agent Hughes. The agents followed him into his house and a struggle ensued during which Simon struck and kicked Hughes and agent Haight before they put handcuffs on him. Another struggle followed, with Simon kicking Hughes and Haight and biting agent Rendina. Finally, Simon again kicked an agent before they put him into the agents' car. Agent Haight signed a probable cause arrest complaint the next morning. Rule 5(a), Fed.R.Crim.P. The indictment followed.

The validity of the arrest before us is not determined by Illinois law since 26 U.S.C. § 7607 is determinative. *Cf.* United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948). The question then is whether Haight's affidavit, basis of the complaint, shows that the agents had reasonable grounds to believe Simon had committed a narcotics law violation, when they made the arrest. We agree that the probable cause issue must be determined upon the knowledge possessed by the agents at the time of arrest and not upon evidence developed at the trial, following the pretrial hearing on the motion to quash. The terms "reasonable grounds" in 26 U.S.C. § 7607, and "probable cause" in the Fourth Amendment, are substantial equivalents. Elkanich v. United States, 327 F.2d 417 (9th Cir.), cert. denied, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964). See also Wong Sun v. United States, 371 U.S. 471, 478, n. 6, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Walker, 246 F.2d 519, 526 (7th Cir. 1957).

Agent Haight's affidavit states that in the evening of March 27, 1967, he received a telephone call from Lieutenant Detective Davenport of the Madison, Wisconsin, police department; that Davenport reported, substantially, that he and Detective McFarland had on March 14 seized three pounds of marijuana in

Anna R. Lavin, Edward J. Calihan, Jr., Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Michael B. Cohen, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

Defendant appeals his conviction, by the court without a jury, on three counts of the willful, forceful assault, resistance and interference with narcotics agents in performance of their official duties.[1] We affirm.

Before trial, Simon moved to quash the indictment on the ground, *inter alia*, that his arrest was "illegal, unlawful and unwarranted." The district court decided that the arrest was based on probable cause and that it was therefore unnecessary to decide whether the agents had time to obtain a warrant.

The testimony in the light most favorable to the government is: On March 27, 1967, narcotics agents, without a warrant for his arrest, went to Simon's home in Chicago, at night, to arrest him. They observed him through a window, rang the front door bell, and when he came to the door announced to him they

---

the apartment of one Friedman; that Friedman was not arrested and had on March 15, in the presence of his attorney, told the police that Simon had been his source of supply for three years; that on March 21, on information given Detective Kelly by Friedman in the presence of his attorney, Kelly and Friedman picked up a package at the post office addressed to Malcolm Jackson, Friedman's alias, which contained marijuana; that on March 21 Friedman told McFarland the package was sent pursuant to a previous call from Simon in California after Friedman agreed to use the alias and to pay $175.00 for the marijuana; and that on March 27 Friedman told Detective McFarland that Simon had called him from Chicago to check on the arrival of the package and that Simon said he knew something was wrong in Madison and was going to Europe immediately.

Haight's affidavit went on to state that McFarland had given him a description of Simon, his and his father's address and telephone number—all of which had been furnished by Friedman; that Simon was subject of a Madison marijuana investigation in May and July of 1966; that Haight's check of Narcotics Bureau files disclosed Simon's arrest for possession of marijuana in April, 1966; that Haight found Simon's father's name, address and telephone number coincided with the information given by McFarland; and that the person who answered the door at the address, the night of arrest, filled the description Haight had been given and admitted that he was Donald Simon.

■■ We hold that the warrantless arrest was valid because we think the agents could have "reasonably" believed that Simon had committed a narcotics offense and might escape arrest if time was taken to obtain a warrant the next day. The facts and information known to the agents, or learned "from others" before the arrest were "such as to warrant a man of prudence and caution" in believing that Simon had committed the narcotics offense for which he was ar-

rested. Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925). What Lieutenant Detective Davenport knew directly and told Haight was hearsay and what Davenport told Haight Detectives McFarland and Kelly told him was more remote hearsay. But hearsay proximate or remote does not of itself vitiate an arrest with or without a warrant, as long as there is a substantial basis for crediting the hearsay. Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). We think Haight had a substantial basis for believing what Davenport told him, and that Davenport, knowing what he knew directly, had a substantial basis for believing what Detectives Kelly and McFarland told him. See United States v. McCormick, 309 F.2d 367, 372 (7th Cir. 1962); Rodgers v. United States, 267 F.2d 79 (9th Cir. 1959).

■ We brush aside as frivolous any suggestion that Lieutenant Detective McFarland may not exist as far as Haight knew. What Kelly and McFarland learned from Friedman was from a reliable source. The freedom and cooperation of Friedman, the post office pickup of the marijuana, and the presence of Friedman's lawyer at the various conferences indicate the reliability of the source. This court in sustaining a search warrant noted that in its "functioning" the FBI must reasonably be assured the need of agents in one locality relying upon information given by agents in another. United States v. McCormick, 309 F.2d 367, 372 (7th Cir. 1962). We see no less a need between state and federal law enforcement officers. This need is evident from the Haight affidavit, namely, a sale agreed to, and confirmed, respectively, in telephone calls from California and Chicago, Illinois, to Madison, Wisconsin, and investigations by Madison police officers with respect to a matter of federal concern. Impediments to cooperative communication and to interdependence between local and federal law enforcement officials should not be encouraged by narrow application of rules

of law at the cost of effective lawful co-operation. The confirmation of Simon's address and telephone number, the description, coinciding with Simon's admitted identity at the door, enhanced the reliability of the information given Haight by Davenport and McFarland. The bare affidavit in Aquilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), distinguishes that case from the one before us, and the rule in *Aquilar*, at 114, 84 S.Ct. 1509, which Simon relies on, is met here by the circumstances which we think render the hearsay sufficiently reliable. The Commissioner, upon the basis of Haight's affidavit, presumably thought the affidavit sufficient to sustain the arrest, and the district court before trial decided there was probable cause. We think the recent Supreme Court decision in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (Jan. 27, 1969), further explicating the standards of *Aquilar*, is distinguishable upon its facts from the case now before us and does not preclude our conclusion that there was probable cause for Simon's arrest.

 The case of John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900), principally relied on to justify Simon's forceful resistance of the arrest, is inapplicable because of our holding. The same is true of other cases relied on by Simon. Because the arrest of Simon was lawful, he had no right to resist the arrest with force. *Cf.* United States v. Heliczer, 373 F.2d 241 (2d Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967), and authorities cited therein.

■■ As an additional ground for sustaining Simon's conviction, the government argues that even if the arrest was unlawful, Simon had no right to resist the arrest as he did. We think this argument has merit, and that the consequences of accepting defendant's argument to the contrary would lead to great mischief with respect to encouraging resistance to, and to endangering, arresting officers. We recognize that law enforcement officers are frequently called on to make arrests without warrants and should not be held, so far as their personal security is concerned, to a nicety of distinctions between probable cause and lack of probable cause in differing situations of warrantless arrests. It is for this reason we believe that the force of *John Bad Elk* has been diminished. See United States v. Heliczer, 373 F.2d 241, 246, n. 3 (2d Cir. 1967). In the case before us the FBI officers, at the door of Simon's home, identified themselves so that Simon was aware who they were. And the agents did not lose this official capacity, even if the arrest were subsequently adjudged to be unlawful. *Id.* at 245.

The agents testified at the trial that they informed Simon that they were narcotics agents, and we conclude that the evidence taken most favorably for the government supports Simon's conviction.

Affirmed.