UNITED STATES

v.

Private (E-1) Jimmie L. CRITTENDEN,
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, US Army, Battery A, 1st
Battalion, 81st Field Artillery, APO New
York 09035.

SPCM 11629.

U. S. Army Court of Military Review.

22 July 1976.

Appellate Counsel for the Accused: CPT
Ronald Riggs, JAGC; CPT Sammy S.
Knight, JAGC; LTC James Kucera, JAGC;
COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States:
CPT Clement L. Hyland, JAGC; CPT Gary
F. Thorne, JAGC; MAJ John T. Sherwood,
Jr., JAGC; LTC Donald W. Hansen, JAGC.

OPINION OF THE COURT

BAILEY, Senior Judge:

The appellant was tried by a military
judge, sitting as a special court-martial, for
the offenses of disrespect towards a superi-
or commissioned officer, striking a superior
commissioned officer who was then in exe-

cution of his office, and willful disobedience of a lawful command of a superior commissioned officer in violation of Articles 89 and 90, Uniform Code of Military Justice, 10 U.S.C. §§ 889 and 890, respectively. He was found guilty of the disrespect and disobedience offenses as charged. Regarding the assault offense, he was found not guilty of striking a commissioned officer who was then in the execution of his office, but, by exceptions and substitutions, guilty of striking a superior commissioned officer (not then in the execution of his office) in violation of Article 128, UCMJ, 10 U.S.C. § 928. He was sentenced to be discharged from the Army with a bad-conduct discharge, to be confined at hard labor for six months, to forfeit $229.00 pay per month for six months, and to be reduced to the grade of Private E–1. The convening authority approved the sentence.

In the instant case, briefs have been filed in response to the following issues specified by the Court:

I

WERE THE AFFIRMATIVE DEFENSES OF DIVESTITURE AND SELF–DEFENSE REASONABLY RAISED BY THE EVIDENCE?

II

IF THE ABOVE QUESTION IS ANSWERED IN THE AFFIRMATIVE, WAS APPROPRIATE GUIDANCE PROVIDED THE CONVENING AUTHORITY BY THE STAFF JUDGE ADVOCATE IN HIS POST–TRIAL REVIEW?

A recitation of the facts as depicted in the record may be helpful in placing the respective issues in proper perspective. On direct examination, Lieutenant W testified substantially as follows. On 8 August 1975, at about 1850 hours, he walked past the appellant who was sweeping the parking lot in front of the billets at a distance of about ten feet. He asked the appellant how he was doing and the appellant replied, "How are you doing my ass." At that point the witness ordered the appellant to be at ease, to which the appellant replied, "I'll be at ease whenever I fucking feel like it." The

witness, pointing his finger at the appellant, again ordered him to be at ease and the appellant responded by saying, "You don't point your fucking finger at me punk." After an additional order to, "Be at ease," the witness was struck by the appellant on the left side of his face. He was not injured but the blow knocked his glasses and hat off his head.

On redirect examination Lieutenant W testified in part as follows:

". . . And I told him that I would point my finger at him whenever I felt like it and to be at ease. And he said to point it again. And I said to be at ease. At that time I was holding my finger at approximately chest level and I was standing away from him. He was fairly close to me. I had to back off. He was within I would say nose to nose—at least 3 inches—2 inches—very close—looking down on me. . . ."

In response to questions asked by the military judge, Lieutenant W testified in part as follows:

"Q: And then what—you were about 10 feet away from Crittenden when you first saw him?

A: Yes sir. He was—as you are going inside the billets, he was on the right side of the parking lot. I was approximately 10 feet away from him.

* * * * * *

Q: —how did you get close to each other?

A: Well, I—I was at the foot of the steps when he said, 'How you doing my ass'. I kind of did an about face and told him to be at ease. And I walked closer to him.

Q: So that you approached him rather than him approaching you?

A: Well, he approached me also. It was kind of a double take."

Private Robert L. Crowthers, as a prosecution witness, testified that he observed the incident between the appellant and Lieutenant W from the second floor of a nearby building at a distance of about 25

yards. He heard no words exchanged but realized an argument was taking place. "It just looked like they were yelling or something at one another." He saw the appellant swing at the Lieutenant but did not see the blow land. He saw the Lieutenant's head move and his glasses fall off. He did not see the Lieutenant strike or push the appellant. He did not see the Lieutenant make any advances toward the appellant.

On the merits, the appellant testified substantially as follows. He and a Private Blackley were sweeping the parking lot when Lieutenant W and another officer arrived and went into the building. Lieutenant W came back outside and started swearing at him. Acting as if he wanted to fight, the Lieutenant moved to within one foot of his face, using a loud tone of voice, and spitting on the appellant. The Lieutenant put his finger about three inches from his nose. At this point the appellant said, "Sir, would you please get your finger out of my face?" After the Lieutenant told him to be at ease, the appellant said, "Sir, would you get your fucking finger out of my face?" Lieutenant W then said, "Crittenden, you stand at god damn ease." The Lieutenant then pushed and shoved the appellant and moved toward him with his fists held out and said, "Come on Crittenden, hit me, hit me, Crittenden," whereupon the appellant pushed the Lieutenant with an open hand against his chest because he felt the Lieutenant was going to attack him. According to the appellant, the Lieutenant then said, "I've got you now, Crittenden," and "Did anybody see it?" The appellant denied having sworn at Lieutenant W when he first saw him. Further, he did not say, "How are you doing my ass," or "Fuck your at ease." He did not believe that Lieutenant W conducted himself properly because the Lieutenant was trying to get in a fight with him.

Private Allis Blackley, as a defense witness, testified substantially as follows: He was working with the appellant when Lieutenant W and another officer passed them and went into the billets. Lieutenant W came running back out of the billets raving mad and pointing his finger in the appellant's face. The appellant asked the Lieutenant not to put his finger in his face. Then the Lieutenant pushed the appellant and looked as though he wanted to fight. The appellant acted as though he was surprised. According to the witness, it looked as though both of them were ready to fight, so he stepped between them. Lieutenant W was trying to get at the appellant while he held them apart. Lieutenant W then said, "I've got you now." The witness also stated that the appellant did not speak to the Lieutenant as he walked by, but, at the time, was talking with him (Blackley). The appellant did nothing to provoke the Lieutenant.

As a defense witness, Private Raymond Carter testified that he observed the incident from the day room at a distance of about 20 feet. The appellant and the Lieutenant were arguing. He saw Lieutenant W push the appellant and the appellant pushed him back and the Lieutenant's glasses were knocked off. He heard the Lieutenant say, "I've got you now, Crittenden, I've got you now," twice. He considered the appellant a buddy, not a friend.

The sworn testimony on the merits of three additional defense witnesses, Specialist Four David Cooper, Private First Class James Waters, and Private First Class Scott Robinson, in material part, was substantially the same as that elicited from Private Carter.

Examination of the record of trial discloses, that the trial defense counsel's argument for acquittal of Charge I and its specification, and Specification 1 of Charge II, was bottomed on divestiture and self-defense. In addition to the foregoing, a similar argument is implicit in his letter to the convening authority, which was submitted as a rebuttal to the post-trial review, as provided for in *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

The following extracts from the staff judge advocate's post-trial review are pertinent to the issues under consideration:

"4. DISCUSSION.

&ast; &ast; &ast; &ast; &ast; &ast;

e. . . .

This review, including the recommendations hereinafter made, constitutes my opinion on the legality of the proceedings, the correctness of the findings, and the appropriateness of the sentence of the court. The discussion includes my opinion concerning the rulings of the military judge and the findings of guilty. This opinion is not binding on you. As the convening authority in this case, it is your independent responsibility to personally weigh the evidence, judge the credibility of witnesses, and determine the directly controverted questions of fact. Particularly in this case those questions of fact dealing with who instigated the incident and who was the aggressor. You may approve only that part of the findings which you find correct in law and fact and which you in you (sic) discretion determine should be approved. Before approving any findings of guilty, you must also personally conclude that it is established beyond a reasonable doubt by the competent evidence of record. Your authority to disapprove any or all findings of guilty is conditioned only by your discretion. In this regard the defense counsel specifically requested that you set aside the findings and sentence in his letter of 18 September 1975. The Defense Counsel contends that the evidence does not support the conviction beyond a reasonable doubt. It is my opinion that the military judge, as the trier of fact, heard sufficient evidence to make the findings of guilty. He heard the evidence, observed the witnesses and was in a position to best determine their demeanor while ascertaining their truth and veracity.

\* \* \* \* \* \*

6. OPINION.

In my opinion,

a. The court (military judge) was properly constituted and had jurisdiction over the accused and the offenses of which the accused was found guilty;

\* \* \* \* \* \*

c. The competent evidence of record establishes his guilt beyond a reasonable doubt and the finding (sic) of guilty is correct in law and in fact."

In their brief, which was filed in response to the issues specified by this Court, appellate counsel for the Government contend that Lieutenant W's conduct did not rise to the level of impropriety such that it could be said that he was not acting within the execution of his office. Thus, the affirmative defense of divestiture, they argue, was not reasonably raised by the evidence. They also contend that the affirmative defense of self-defense was not reasonably raised by the evidence, because the appellant, being larger than the Lieutenant, did not have reasonable grounds for the apprehension of injury. Regarding the post-trial review, they contend that error, if any, occasioned by the staff judge advocate's failure to provide the convening authority with legal guidelines concerning the indicated affirmative defenses, was cured by the trial defense counsel's rebuttal letter, wherein the affirmative defenses were discussed and were, thereby, brought to the attention of the convening authority.

On the other hand, appellate defense counsel contend that the affirmative defenses of divestiture and self-defense were reasonably raised by the evidence. In light thereof, their argument continues, the staff judge advocate's post-trial review is prejudicially deficient, in that it does not set forth any legal guidelines on the indicated affirmative defenses which the convening authority could apply to the facts of the case. Failure to provide these guidelines, they urge, was error, which warrants our ordering a new review and action. Their argument, in each respect, has persuasive merit.

At this point it is considered appropriate to recall certain applicable norms and principles. Paragraph 214, Manual for Courts-Martial, United States, 1969 (Revised edition), wherein special defenses are discussed, reads, in part, as follows:

"The burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the Government, both with respect to those elements of the offense

which must be established in every case and with respect to issues involving special defenses which are raised by the evidence.

A special defense may be raised by evidence presented by either the defense or the prosecution, or at the request of the members of the court . . . When any special defense is raised by the evidence, the members of the court-martial must be instructed as to the defense and that they may not find the accused guilty of the offense affected thereby unless they are convinced beyond a reasonable doubt that the basis of the special defense does not exist. . . ."

Paragraph 216c, Manual, *supra*, in part here pertinent, defines self-defense as follows:

"When there is reasonable ground for the apprehension of an injury less than death or grievous bodily harm, the accused is entitled to use such force as he believes necessary to defend against this injury so long as this force is less than that which can reasonably be thought likely to produce grievous bodily harm or death. . . ."

Of particular significance here is what was said in *United States v. Smith*, 23 U.S. C.M.A. 98, 48 C.M.R. 659 (1974):

"This Court has long held that the staff judge advocate's post-trial review must fairly summarize the evidence on both sides of an issue and provide the convening authority with adequate guideposts by which to determine anew the guilt or innocence of the accused. *United States v. Bennie*, 10 U.S.C.M.A. 159, 27 C.M.R. 233 (1959); *United States v. Fields*, 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958). As was recently reiterated in *United States v. Cruse*, 21 U.S.C.M.A. 286, 288, 45 C.M.R. 60, 62 (1972):

'In a case that presents contested issues, the staff judge advocate should give reasons for the opinions expressed in his review.'" (23 U.S.C.M.A. at 99, 48 C.M.R. at 660).

In a similar vein, the Court of Military Appeals, in a very recent decision (*United States v. Curtis*, 1 M.J. 297 (1976)), stated:

"First, the staff judge advocate failed to provide any guidelines in the post-trial review for the convening authority to use in evaluating the appellant's principal position at trial on the murder allegation: that he acted in self-defense. This affirmative defense was raised by the evidence, argued by the appellant's civilian defense counsel, discussed in the trial counsel's closing argument to the court, and instructed upon by the military judge prior to the court's deliberation on the findings. We reversed the accused's conviction in *United States v. Smith*, 23 U.S. C.M.A. 98, 48 C.M.R. 659 (1974), in part, for cursory review of a self-defense issue in failing to discuss adequately the legal concepts by which the convening authority was to measure the accused's claim of self-defense. The same failure here is similarly fatal." (24 U.S.C.M.A. at 150, 151, 51 C.M.R. at 341, 342, 1 M.J. at 298).

*Also see United States v. Gaines*, 49 C.M.R. 699 (A.C.M.R.1975); *United States v. Robinson*, 47 C.M.R. 159 (A.C.M.R.1973); *United States v. Childs*, 43 C.M.R. 514 (A.C.M.R. 1970).

It has been held on several occasions that misconduct on the part of a superior in his dealings with a subordinate may divest the former of his cloak of authority as a superior regarding offenses committed upon or against him by the subordinate. *United States v. Struckman*, 20 U.S.C.M.A. 493, 43 C.M.R. 333 (1971); *United States v. Noriega*, 7 U.S.C.M.A. 196, 21 C.M.R. 322 (1956); *United States v. Johnson*, 43 C.M.R. 604 (A.C.M.R.1970); *United States v. Garretson*, 42 C.M.R. 472 (A.C.M.R.1970); *United States v. Revels*, 41 C.M.R. 475 (A.C.M.R. 1969).

■ In the instant case, the facts having previously been set out in some detail need not be repeated here. We are satisfied, and so find, that the affirmative defenses of divestiture and self-defense were reasonably raised by the evidence of record. As earlier noted, both were argued by the trial

defense counsel and, to some extent, commented upon by the trial counsel. Further, that the affirmative defense of divestiture was raised is implicit in the military judge's findings with respect to Specification 1 of Charge II.

Turning then to the post-trial review, we note that the staff judge advocate fairly summarized the testimony of the witnesses, and without delineating the elements of the offenses of which the appellant had been found guilty, opined that the evidence of record established the appellant's guilt beyond a reasonable doubt. In his discussion of the convening authority's responsibilities relating to findings, the staff judge advocate properly advised the convening authority of his independent responsibility to weigh the evidence, judge the credibility of the witnesses, and determine controverted questions of fact. At this point he noted that particular attention should be given to "those questions of fact dealing with who instigated the incident and who was the aggressor." He then further advised the convening authority that he should approve only such findings of guilty as he found, beyond a reasonable doubt, correct in law and fact and as he in his discretion determined should be approved. This was followed by a reference to the trial defense counsel's letter of 18 September 1975, requesting that the convening authority set aside the findings and sentence. He noted that the request was bottomed on the trial defense counsel's contention that the evidence did not support the conviction beyond a reasonable doubt. Without any further comment the staff judge advocate concluded this discussion with the following remark: "It is my opinion that the military judge, as the trier of fact, heard sufficient evidence to make the findings of guilty. He heard the evidence, observed the witnesses and was in a position to best determine their demeanor while ascertaining their truth and veracity."

 From the foregoing, it becomes apparent that the staff judge advocate initially erred in not delineating and discussing the elements of the offenses of which

the appellant had been found guilty. For, as it has aptly been said:

". . . Sometimes the evidence establishes guilt so clearly and compellingly that a recital of the evidence points unerringly to a conclusion of guilt. However, in a case involving disputed questions of fact, a mere summarization of the testimony does not necessarily point to the correct conclusion. Rationalization is required. And if the reasons offered for the conclusions are not persuasive, the conclusion may be unsound." *United States v. Bennie, supra,* at 10 U.S.C.M.A. 160, 27 C.M.R. 234 (1959).

Here the appellant's testimony, as corroborated by the testimony of other defense witnesses, raised substantial issues of fact from which emerged the affirmative defenses of divestiture and self-defense. The situation, therefore, is one which required the staff judge advocate to give reasons for his opinion. *United States v. Cruse, supra.* Further, and more germane to the issues under consideration, the staff judge advocate failed to provide any guidelines in the post-trial review by which the convening authority was to measure the affirmative defenses of divestiture and self-defense as asserted by the appellant. This omission constituted fatal error. *United States v. Curtis, supra.* Although the trial defense counsel's rebuttal letter apprises the convening authority of the affirmative defenses, it, too, does not provide the pertinent guidelines. Moreover, under such circumstances, we have no way of knowing that the views expressed by a partisan advocate (trial defense counsel) receive the same consideration from the convening authority as those expressed by his staff judge advocate.

The action of the convening authority, dated 3 October 1975, is hereby set aside. The record of trial is returned to The Judge Advocate General for a new review and action by a different convening authority.

Judge COOK concurs.

Judge DeFORD absent.