**UNITED STATES, Appellee,**

v.

**Turan ROZIER, Private, U. S. Marine Corps, Appellant.**

**No. 31,355.**

U. S. Court of Military Appeals.

September 10, 1976.

*Lieutenant Lawrence S. Smith*, JAGC, USNR, argued the cause for appellant, Accused. With him on the brief was *Lieutenant Walter A. Smith, Jr.*, JAGC, USNR.

*Lieutenant Commander Harvey E. Little*, JAGC, USN, argued the cause for appellee, United States. With him on the brief were *Lieutenant Colonel P. N. Kress*, USMC, and *Lieutenant Steven D. Moore*, JAGC, USNR.

## OPINION OF THE COURT

PERRY, Judge:

The appellant's special court-martial resulted in his conviction, contrary to his pleas, of disrespect to a superior commissioned officer, disobedience of a lawful order from that same officer, and three separate instances of disrespect toward superior noncommissioned officers, in violation of Articles 89, 90, and 91, respectively, Uniform Code of Military Justice, 10 U.S.C. §§ 889, 890, and 891. Before this Court, the appellant challenges the validity of his convictions for disrespect toward the three noncommissioned officers,[1] contending that by forcibly detaining the appellant immediately following his illegal apprehension, the noncommissioned officers involved acted beyond the scope of the lawful execution of their offices. We agree.

The facts surrounding the appellant's apprehension by the San Diego Shore Patrol are not in dispute. The appellant arrived at the San Diego bus station at approximately 10:30 p. m. on December 2, 1973, to obtain transportation back to his unit at Camp Pendleton. To pass the 2 hours he was told he would have to wait to catch the next bus, the appellant first walked across the street to watch some others play pool, then returned to the station. Apparently, the

appellant dozed off while waiting in the station, for the next thing he remembered was being awakened by San Diego police officers who asked him to accompany them to their car. The appellant complied with the request and sat in the cruiser's back seat as directed while the officers used their radio.

The police officers' radio communications apparently were to summon the shore patrol, for within a short period of time a shore patrol van arrived and the civilian police remanded the appellant to their custody in a so-called "courtesy turnover." The appellant then was placed in "protective custody"[2] which, however dubbed, amounted to no less than an apprehension in legal effect.[3] Believing he had done nothing unlawful and having no reason to believe that the shore patrol had any justification to arrest him,[4] the appellant resisted the apprehension which, ultimately, was effectuated in a brutal and needless assault upon the appellant by the shore patrol.[5]

Once apprehended, the appellant was transported to the shore patrol headquarters where he physically was dragged by his ankles out of the van while handcuffed and permitted to drop unimpeded 18 inches to

---

1. Charge III, specifications 2, 3, and 4.

2. §§ 2510(5), 2512, and 2514, CINCPACFLTINST 5440.3C (Jul. 16, 1973).

3. Apprehension is the taking of a person into custody. Article 7(a), Uniform Code of Military Justice, 10 U.S.C. § 807. Section 2510(5), CINCPACFLTINST, supra, purports to distinguish "protective custody, a preventive measure for the protection of the individual," and apprehension. The distinctions sought to be drawn are in the reason for the action and in the result thereof. "Protective" custody is to be for protection of the individual and is to be accomplished whenever his "actions indicate that his self-control or judgment is materially impaired, either from the consumption of alcoholic beverages or from any other cause," §§ 2510(5) and 2512; upon being taken into "protective custody," the individual is to be returned to his command, §§ 2510(5), 2512, and 2514. On the other hand, "apprehension" may be effectuated only upon existence of probable cause to believe that the individual apprehended has committed an offense under the

Uniform Code, § 2513.1; see Article 7(b), UCMJ, 10 U.S.C. § 807. Regardless of these purported differences in reasons and practical effect, to the extent that an individual is in the shore patrol's "custody," as opposed merely to being escorted voluntarily back to his unit, his status is that of having been "apprehended." Article 7(a), UCMJ.

4. The appellant testified that when he inquired of the shore patrol as to their reason for ordering him into their van, the reply he received was, "[N]ever mind just get in the van." The appellant's testimony addressing the circumstances surrounding his apprehension is unrebutted in the record and was accepted by the Navy Court of Military Review.

5. This Court is shocked by the unwarranted physical abuse perpetrated upon the appellant by the San Diego Shore Patrol and trusts that necessary steps will be taken to insure no repetition of such misconduct.

the ground. Attempts then were made to process his custody, including a search of his person, and he was placed in a barred cell. Throughout this period of several hours, the appellant resisted his detention both physically and verbally, the latter taking the form of obscene epithets directed at any and all shore patrol members to whom the appellant was exposed, and forming the basis for the three charged disrespects toward senior noncommissioned officers. By all accounts, including his own admissions, the appellant acted extremely angry at his being apprehended and detained, and he challenged and resisted that status continually. In fact, the appellant was taken to the hospital, suspected of being on drugs, because there was no sign of alcohol use and because he was not acting "sensible." The suspicion that the appellant had used drugs proved unfounded.

 In the military, an individual is not guilty of having resisted apprehension if that apprehension was illegal, *see United States v. Nelson*, 17 U.S.C.M.A. 620, 38 C.M.R. 418 (1968), for the general rule is that a person can defend against an illegal arrest or apprehension. *United States v. Clansey*, 7 U.S.C.M.A. 230, 22 C.M.R. 20 (1956). Similarly, the legality of confinement is an essential element of a charged escape therefrom, *see United States v. Carson*, 15 U.S.C.M.A. 407, 35 C.M.R. 379 (1965); *United States v. Haliburton*, 9 U.S. C.M.A. 694, 26 C.M.R. 474 (1958), and if either the arrest leading to the confinement or the confinement itself was illegal, there can be no "escape" from confinement, for the purported restraint was unlawful.[6]

6. "Illegal" apprehension or confinement is to be distinguished from "improper" or "irregular" restraint. While the former (*i. e.*, no probable cause to apprehend or the confining officer lacks authority to do so) may be resisted, the latter (*i. e.*, the individual believes himself innocent or the place of confinement is improper) is not subject to relief through self-help.

7. Neither the San Diego police nor the shore patrol possessed the requisite probable cause to apprehend the appellant. The actions of the *civilian* police allegedly were pursuant to § 647 of the California Penal Code, entitled "Disorderly Conduct," which defines certain specific acts as misdemeanors. However, as the appel-

*United States v. Hangsleben*, 8 U.S.C.M.A. 320, 24 C.M.R. 130 (1957); *United States v. Gray*, 6 U.S.C.M.A. 615, 20 C.M.R. 331 (1956).

 While the complained-of convictions in this case were for disrespect toward senior noncommissioned officers, in all reality the conduct of the appellant amounted in fact and in law to attempting to escape unlawful[7] custody. This is compelled by the illogic apparent if physical actions toward that end were permitted, but accompanying verbal ones toward the same end were not. Since a serviceperson may be apprehended and confined only if probable cause (or reasonable belief) exists that an offense has been committed and that he committed it, Articles 7(b) and 9(d), UCMJ, 10 U.S.C.A. §§ 807(b), 809(d), the shore patrol members who apprehended the appellant and those who perpetrated his unlawful custody exceeded the scope of their offices, both as shore patrol personnel and as noncommissioned officers.

The decision of the United States Navy Court of Military Review is reversed. The findings of guilty as to Charge III, specifications 2, 3, and 4, are set aside and the same are dismissed. The record is returned to the Judge Advocate General of the Navy for return to the Court of Military Review which either may reassess the sentence in light of our action or may order a rehearing on the sentence based on the remaining findings of guilty.

Chief Judge FLETCHER concurs.

lant's conduct in sleeping in the bus terminal is not included therein, the Court of Military Review correctly found merit in the appellant's contention that the apprehension by the civilian police was unlawful. Moreover, there existed no probable cause for the shore patrol to believe the appellant had committed any offense, much less one cognizable under the Uniform Code which would be subject to the military justice system as service connected. As no legal basis existed, under any theory, for the appellant's apprehension by the shore patrol, the continued restraint on his liberty similarly was without lawful foundation.

COOK, Judge (concurring in the result):

Although an allegedly illegal apprehension initiated the events that led to the three specifications of disrespect by language that are before us, I do not believe that determination of the scope or duration of allowable resistance to such restraint of the person is necessary or appropriate. Each instance of disrespectful language was triggered by conduct of the police officer to whom the language was addressed. Judge Perry has described that conduct as so "brutal and needless" as to be shocking. In my opinion, the accused's verbal responses to that conduct, including the expletives, did not constitute disrespect within the meaning of Article 91, Uniform Code of Military Justice, 10 U.S.C. § 891. *United States v. Noriega*, 7 U.S.C.M.A. 196, 21 C.M.R. 322 (1956). *See also United States v. Struckman*, 20 U.S.C.M.A. 493, 43 C.M.R. 333 (1971). From that standpoint, I agree with the majority that the charges should be dismissed, and I concur in the disposition directed.