**UNITED STATES, Appellee,**

v.

**Tyrone LEWIS, Private, U. S. Army, Appellant.**

No. 36,744.

CM 436523.

U. S. Court of Military Appeals.

Oct. 1, 1979.

For Appellant: *Captain Jacob J. Holeman* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Carlos A. Vallecillo* (on brief); *Major Benjamin A. Sims.*

For Appellee: *Captain Harry J. Gruchala* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major Robert B. Williams* (on brief).

Opinion of the Court

COOK, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial, consisting of a military judge alone, of assault on a superior commissioned officer while in the execution of his office, disrespect toward a superior commissioned officer, and possession of marijuana, in violation of Articles 89, 90 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 889, 890 and 934, respectively. We granted review to consider whether the officer involved divested himself of his cloak of authority as an officer and to determine whether a laboratory report was properly admitted into evidence.

The first issue is raised in the following context. Captain Baggett, the commanding officer of the company to which appellant was assigned, testified that he and Private First Class Mason proceeded to the company billets on June 24, 1977, for the purpose of ascertaining whether some keys in his possession fit the locks within the billets. After entering the stairwell, he observed the appellant in the foyer. As he approached, the appellant observed him and "jumped up and ran toward the door—moved very quickly toward his room." Captain Baggett detected an odor which, from previous experience, he concluded was that characteristic of marijuana. As appellant had been the only person present in the foyer, the Captain followed appellant to his room and called to him to " '[h]old it right there.' " He questioned appellant as to what he had in his hands and "looked in the immediate area for some marijuana or other substance." He then told appellant to empty his pockets. Appellant complied and displayed a pair of surgical scissors with what appeared to be a partially burnt cigarette attached. Captain Baggett observed a bulge in appellant's pocket, which he suspected was made by marijuana.[1] He thereupon attempted to read appellant his rights from an "Article 31 card," but appellant became "belligerent and hyper." He ordered appellant to stand at attention; initially appellant refused but complied when the Captain indicated that the military police would be called. The Captain then advised appellant of his rights; appellant responded: " 'Aw man, I don't have to listen to this shit.' " This language gave rise to the charge of disrespect. A short time later, appellant forcefully removed Captain Baggett from the only exit from the room by grabbing him and shoving him against the wall. This conduct gave rise to the charge of assault. Finally, Captain Baggett testified that he had not placed the appellant under arrest or apprehension. Private Mason testified in substantial accord with the testimony of Captain Baggett.

Appellant submits that the officer's conduct was, in effect, a search and apprehension without probable cause. He further submits that, even if probable cause existed, the Captain was required to obtain a search warrant prior to entering his room. Furthermore, the appellant maintains, as he did before the trial judge, that Captain Baggett lost his cloak of authority, and appellant became entitled to resort to " 'self-help' " to resist the Captain's attempt to search and apprehend him.

Government counsel contend that any search of appellant was incident to an apprehension predicated on probable cause, and even if the search was improper, the officer did not exceed the scope of his office. Finally, the Government submits that the assault occurred after the search and, therefore, the legality of the search is not relevant to a determination of the granted issue as it relates to that charge.

Although Captain Baggett testified that he had not placed appellant under arrest or apprehension, government counsel argue that the detention of appellant in his room and the Captain's order to "hold it" constituted apprehension. *See United States v. Kinane,* 1 M.J. 309 (C.M.A.1976). However, as we view the matter, its resolution does not turn exclusively on whether probable cause existed for apprehension and search. Probable cause is only one factor to be considered in evaluating whether Captain Baggett's conduct was such as to divest him of his official authority.

Relying on *United States v. Rozier,* 1 M.J. 469 (C.M.A.1976), and *United States v. Hendrix,* 21 U.S.C.M.A. 412, 45 C.M.R. 186 (1972), appellant contends that every instance of a search or apprehension of a person without probable cause equates to a loss of official authority. These cases do not support an equation of that kind. In *Rozier,* among other offenses, the accused was convicted of disrespect toward three

---

1. The charge involving possession of marijuana was unrelated to the incident occurring on June 24, 1977.

noncommissioned officers. The alleged disrespect arose out of the accused's endeavor to free himself from an unlawful apprehension "effectuated in a brutal and needless assault upon" him. *Id.* at 471. The Court concluded that the accused's "verbal" responses were directed to the same end as his physical actions, that is, resistance to the unlawful assertion of force against him. *Id.* at 472. *See Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969). In *Hendrix,* the accused was convicted of assault upon a superior commissioned officer in the execution of his office. On appeal, the accused argued the conviction should be reversed because of the absence of probable cause for a search the officer was conducting when the accused assaulted him. The Court held that the existence *vel non* of probable cause for the search was not determinative of the validity of accused's conduct in pushing the officer in protesting his reading of a letter he asserted the officer had no " 'right to look at.' " The Court concluded that the record demonstrated a "callous disregard" and "deliberate and continued invasion" of accused's right to the privacy of the letter that exceeded the bounds of "[c]ommon decency and human dignity" and "precipitated . . . [his] physical response." 21 U.S.C.M.A. at 417, 45 C.M.R. at 191.

■ Thus, these cases were not resolved on a simple examination for probable cause but were resolved by weighing all the circumstances. As the conduct of the commissioned officer and noncommissioned officers involved in these cases was inconsistent with their status and office, the Court refused to affirm convictions which were dependent on such status and office. Indeed, *United States v. Noriega,* 7 U.S.C.M.A. 196, 21 C.M.R. 322 (1956), which also reversed for disrespect toward an officer because the officer's conduct was inconsistent with his status and office, involved neither a search nor apprehension. Likewise, the Court reversed a conviction for assault upon a superior commissioned officer in the execution of his office because the officer involved invited the accused to fight. *United States v. Struckman,* 20 U.S.C.M.A. 493, 43 C.M.R.

333 (1971); *see United States v. Richardson,* 7 M.J. 320 (C.M.A.1979); *United States v. Johnson,* 43 C.M.R. 604 (A.C.M.R.1970), *pet. denied,* 20 U.S.C.M.A. 667 (1971). Thus, the Court has not adopted a *per se* rule that the office or authority of a member of the military who is either attempting to search or apprehend an individual is totally dependent upon a finding of probable cause. Rather, his conduct has been judged by all the factors and circumstances involved.

■ Here, the appellant was not responding to any perceived unjust or unwarranted action by Captain Baggett. On the contrary, the Captain was conscientiously endeavoring to apprise the appellant of the rights assured him by law. The accused's verbal response was not to claim what was lawfully his, but to proclaim his contempt and disrespect both for the law and the person informing him of it. We conclude, therefore, that Captain Baggett was not engaged in conduct that divested him of his official authority.

Appellant further submits that his conduct was nothing more than a resistance to an illegal search and apprehension. He cites *United States v. Rozier, supra,* and *United States v. Clansey,* 7 U.S.C.M.A. 230, 22 C.M.R. 20 (1956), in support of his argument that the conviction of the present offense cannot stand because there was no probable cause for the officer's action. *See also United States v. Nelson,* 17 U.S.C.M.A. 620, 38 C.M.R. 418 (1968). In *United States v. Clansey, supra* at 231, 22 C.M.R. at 21, the Court observed the following:

It is the general rule that a person has a right to defend himself against an illegal arrest or apprehension. The force used, however, cannot exceed that reasonably necessary to repel the force allied in the illegal detention. 6A CJS Assault and Battery § 92.

However, the Court held in *Clansey* that there was insufficient evidence of record to require an instruction on the matter. *Accord, United States v. Long,* 7 U.S.C.M.A. 265, 22 C.M.R. 55 (1956). Similarly, in *Nelson,* the Court affirmed a conviction of re-

sisting apprehension, finding that probable cause for the apprehension in question had been established. Finally, while the Court cited both *Nelson* and *Clansey* in *United States v. Rozier, supra* at 472, in reversing the conviction for disrespect, its decision was not limited to a determination that the apprehension was illegal.

Thus, the Court is faced for the first time with the issue of whether a retroactive determination that probable cause was lacking is, by itself, a defense to a charge of assault on a commissioned officer in the execution of his office and disrespect toward that officer.[2] As noted in *Clansey,* the general rule at the time *Clansey* was decided permitted an accused to defend against an illegal arrest or apprehension. Since *Clansey,* however, the rule has fallen into disfavor.

The language of the United States Court of Appeals for the Second Circuit in *United States v. Heliczer,* 373 F.2d 241, 245 (1967), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967), in affirming a conviction for assault on a federal narcotics agent is particularly instructive:

"Engaged in * * * performance of official duties" is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful.

Subsequently, in *United States v. Beyer,* 426 F.2d 773 (2d Cir. 1970), the same court held that an accused could not assault federal officers who were executing a warrant of arrest even if the warrant or arrest itself was invalid. That doctrine was also applied in *United States v. Martinez,* 465 F.2d 79, 82 (2d Cir. 1972), with the following comments:

Even were the arrest without probable cause, Martinez was not justified in responding with the excessive force he displayed. An agent, even if effecting an arrest without probable cause, is still engaged in the performance of his official duties, provided he is not on a "frolic of his own," and is protected from interference or assault.

The general rule has likewise found disfavor in the Seventh Circuit. Rejecting an accused's claim in *United States v. Simon,* 409 F.2d 474, 477 (7th Cir. 1969), *cert. denied,* 396 U.S. 829, 90 S.Ct. 79, 24 L.Ed.2d 79 (1969), that the case of *John Bad Elk v. United States,* 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900),[3] permitted him to forcefully resist an illegal arrest, the court, after holding the arrest was lawful, noted:

As an additional ground for sustaining Simon's conviction, the government argues that even if the arrest was unlawful, Simon had no right to resist the arrest as he did. We think this argument has merit, and that the consequences of accepting defendant's argument to the contrary would lead to great mischief with respect to encouraging resistance to, and to endangering, arresting officers. We recognize that law enforcement officers are frequently called on to make arrests without warrants and should not be held, so far as their personal security is concerned, to a nicety of distinctions between probable cause and lack of prob-

---

2. The two offenses were treated as multiplicious for sentencing.

3. The United States Supreme Court in *John Bad Elk v. United States,* 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900), reversed a conviction of murder because the trial judge had erroneously charged the jury that the accused had no right to resist an illegal arrest. That Court noted the common law rule that if the accused were resisting an illegal arrest, the crime would be reduced from murder to manslaughter. Justice Douglas cited this case in his dissent to a dismissal of a writ of certiorari as improvidently granted where an accused had asserted a right to resist an unconstitutional arrest and search of his person. *Wainwright v. City of New Orleans,* 392 U.S. 598, 613, 88 S.Ct. 2243, 20 L.Ed.2d 1322 (1968); *see generally United States v. Di Re,* 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948). As noted in *United States v. Simon,* 409 F.2d 474, 477 (7th Cir. 1969), *cert. denied,* 396 U.S. 829, 90 S.Ct. 79, 24 L.Ed.2d 79 (1969), "the force of *John Bad Elk* has been diminished."

able cause in differing situations of warrantless arrests. It is for this reason we believe that the force of *John Bad Elk* has been diminished.

409 F.2d at 477.

The Third Circuit has also rejected a claim that an accused has a right to resist an illegal search. *United States v. Ferrone,* 438 F.2d 381 (3d Cir. 1971), *cert. denied,* 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971); *see United States v. Woodring,* 536 F.2d 598 (5th Cir. 1976), *cert. denied,* 429 U.S. 1003, 97 S.Ct. 535, 50 L.Ed.2d 615 (1976); *Schulz v. Lamb,* 416 F.Supp. 723 (D.Nev.1975); *see generally Wright v. Bailey,* 544 F.2d 737, 740 n. 4 (4th Cir. 1976), wherein the court noted the justification for the common law right to resist an arrest had diminished; Model Penal Code § 3.04(2)(a)(i), Proposed Official Draft (May 4, 1962).

The superior-subordinate relationship in the military presents an even more compelling reason to reject the common law rule. Military discipline demands obedience to superiors. An issue of whether probable cause exists for an apprehension often presents a close question. Indeed, the point at which an apprehension is effected in the military is often not clearly defined. *See United States v. Kinane, supra.* We note that the Government in the present case argues that the appellant was apprehended prior to any arrest, while the defense submits that the search preceded the apprehension. The recent case of *United States v. Ezell,* 6 M.J. 307 (C.M.A.1979), emphasizes that even if probable cause is established, there is an additional issue presented in the military justice system as to when a commanding officer may properly authorize a search. Further complications can arise when there is disagreement among the parties as to whether a search or only a military inspection is involved. *Compare United States v. Roberts,* 2 M.J. 31 (C.M.A.1976), *with United States v. Thomas,* 1 M.J. 397 (C.M.A.1976).

We, therefore, hold that an accused cannot assert the illegality of a search or apprehension as a defense to a charge of assault and disrespect and that a military official or officer does not depart from his office simply because there is a subsequent determination that a search or apprehension was not based on probable cause. Accordingly, we do not resolve the probable cause issue urged by the defense but hold that the officer's conduct was not of such a nature as to justify appellant's use of physical force. We emphasize, however, that the manner in which a search or apprehension is effected may give rise to either a claim of self-defense or constitute a departure from the office of the individual involved. *See United States v. Crittenden,* 2 M.J. 941 (A.C.M.R.1976).

Turning to the remaining assignment of error, the appellant maintains as he did at trial, that a laboratory report certifying that the substance submitted to it for analysis was marijuana was inadmissible as evidence against him. A like contention has since been resolved against the appellant in *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge FLETCHER concurs.

PERRY, Judge, concurring in part and dissenting in part: *

I agree with the majority that the officer's conduct was not of such a nature as to justify appellant's use of physical force. I, therefore, concur in the court's affirmance of the appellant's convictions of assault upon, and disrespect towards, a superior commissioned officer. However, for the reasons set forth in my dissenting opinion in *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979), I dissent from that portion of the opinion which affirms the appellant's conviction for possession of marihuana.

---

* Judge Matthew J. Perry took final action in this case prior to his resignation as a judge of this Court pursuant to his appointment and confirmation as a United States District Judge for the District of South Carolina.