UNITED STATES, Appellee

v.

HENRY C. RICHARDSON, Private, U. S. Army, Appellant

2 USCMA 88, 6 CMR 88

No. 740

Decided December 19, 1952

LT COL James C. Hamilton, U. S. Army, and 1ST LT Thomas E. Cole, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, CAPT Irvin M. Kent, U. S. Army, and 1ST LT Benjamin C. Flannagan, U. S. Army, for appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This case is before us on petition for review granted on June 18, 1952, pursuant to the provisions of Article 67(b) (3) of the Uniform Code of Military Justice, 50 USC § 654. The accused was charged with being disrespectful in language toward his superior noncommissioned officers, in violation of Article 91, Uniform Code of Military Justice, 50 USC § C85, and robbery, in violation of Article 122, Uniform Code of Military Justice, 50 USC § 716. Upon trial by general court-martial held in Nurnberg, Germany, on October 31, 1951, the accuséd pleaded not guilty to the charges and the respective specifications thereunder, but was found guilty as charged. The general court-martial sentenced the accused to dishonorable discharge, total forfeitures and confinement at hard labor for three years. The convening authority modified the finding as to the robbery specification by reducing the value of property found to have been stolen, but approved the sentence adjudged by the court-martial. A board of review in the office of The Judge Advocate General, United States Army, on February 6, 1952, affirmed, without opinion, the findings and sentence as approved by the convening authority. We granted accused's petition for review limited to the following issues:

(1) Whether the evidence is sufficient to support the findings of guilt.

(2) Whether the law officer should have instructed on any lesser included offenses on Charge II.

The record of trial discloses that the accused and one Private John Baldwin, U. S. Army, were both members of the 24th Transportation Truck Company, U. S. Army, APO 139. The pertinent evidence relative to Charge II and its specification is summarized as follows: The accused and Baldwin, after spending the evening of September 13, 1951, in the city of Bamberg, Germany, drinking and riding from place to place in a taxicab, returned to their installation at about 2:00 a.m. on September 14, 1951. At this point Baldwin and accused entered into a discussion concerning the payment of the taxi fare. Baldwin testified that he pulled out his wallet; that accused then struck him a blow in the eye, grabbed his wallet and fled. Ac-

cused elected to testify in his own behalf and freely admitted that he struck Baldwin a blow on the head but denied the theft of Baldwin's wallet. Accused in his testimony offered as an explanation for this attack upon Baldwin, the failure of Baldwin to pay or share in the expense of the taxi. Baldwin testified that he had twenty-six (26) dollars in Military Payment Certificates and thirteen (13) Deutsche Marks in his wallet at the time of the alleged theft. We note in our examination of the trial record that the victim (Baldwin) in his report of the incident to the Charge of Quarters and in his original report to the Military Police made no mention of the theft of his wallet, his complaint being directed to the assault and battery committed on his person by accused.

The pertinent evidence relative to Charge I and its specification is summarized as follows: Following Baldwin's report of the accused's assault and battery the accused was summoned to a Military Police Station. Baldwin was present at the time accused entered the Military Police Station, at which time accused admitted that he had struck Baldwin. Baldwin and accused began to argue, whereupon Corporal William Willson (a military policeman) told accused to be quiet and accused replied to Willson: "Well, if you don't like it I'll punch you too," at which time Sergeant Vernon A. Winters (a military policeman) intervened and told accused that it was no way for him to be acting. The accused then said to Winters: "Sergeant, well if you don't like it, I'll take you in the back room and fight you too."

In our consideration of this case we will first consider and dispose of the findings of guilty as to ▮▮▮▮▮ ▮ Charge I and its specification thereunder. In this connection there is only one question, i. e., was the evidence sufficient to support the findings of guilty? The evidence, as adduced, was clear and uncontroverted that the accused used the words ascribed to him in Sergeant Winters' testimony. The accused urges that this language was not per se disrespectful and was not considered disrespectful when spoken. Article 91(3),

Uniform Code of Military Justice, 50 USC § 685, provides:

"... treats with contempt or is disrespectful in language or deportment toward a warrant officer, noncommissioned officer, or petty officer while such officer is in the execution of his office ...."

Paragraph 170a, Manual for Courts-Martial, United States, 1951, discusses Article 91, supra, and in this connection states that Article 91 has the same general objects with respect to noncommissioned officers as Articles 89 and 90 have with respect to commissioned officers, to wit: to protect them, inter alia, from disrespect. Paragraph 168, Manual for Courts-Martial, United States, 1951, in its discussion of Article 89, Uniform Code of Military Justice, 50 USC § 683, concerning "disrespect" through the use of words, says:

"Disrespect by words may be conveyed by opprobrious epithets or other contemptuous or denunciatory language. Disrespect by acts may be exhibited in a variety of modes—as neglecting the customary salute, by a marked disdain, indifference, insolence, impertinence, undue familiarity, or other rudeness in the presence of the superior officer."

An examination of the service cases leaves no doubt that in military law threatening language to a military superior (such as this offer to fight) is per se, disrespect. See United States v. Smith, 10 BR (ETO) 315, 319; United States v. Frakes, 3 BR 47, 48, 55; United States v. Campbell, 18 BR 222, 231. The fact remains unchallenged in the record that both of the noncommissioned officers were in the execution of their office. The record is silent on the question of whether the noncommissioned officers considered the remarks of the accused disrespectful. However, the feeling or opinion of the noncommissioned officers regarding the remarks is irrelevant. The gravamen of the offense lies in the disrespectful conduct toward noncommissioned officers in the execution of their office. Accordingly, we hold that there is sufficient competent evidence to support the finding of guilty as to Charge I and its specification as a mat-

ter of law. This is in no way affected by the obvious fact that the accused used disrespectful language while in the heat of passion, even though the real animus was not directed toward the noncommissioned officers. However, in view of the weight of authority and well-established military precedent, we have no alternative but to find that the words as used by the accused in this tempest teapot situation were disrespectful per se. The accused does not urge any failure of the law officer to instruct properly regarding this offense and our examination of the trial record fails to disclose any deficiency in this respect.

In consideration of Charge II and the specification thereunder, we find that, while there was sufficient ■ competent evidence to support a finding of guilty to said charge and specification, the evidence in the trial record clearly raised the issue of the lesser included offense of assault and battery. As already noted, the accused in his testimony freely admitted that he had committed an assault and battery upon the alleged victim (Baldwin), but he also unequivocally and emphatically denied that he had committed the offense of robbery. We are not attempting to substitute our judgment in the place of the triers of the facts as to the credibility of the witnesses or as to the weight of the evidence, for, as we said in United States v. McCrary (No. 4), 1 CMR 780, decided November 8, 1951:

"It is the cardinal rule of law that questions of fact are determined in forums of original jurisdiction or by those which are expressly granted the authority by constitution or statutes. . . ."

However, we have repeatedly held that the failure to give instructions embodying all the necessary elements of the offense is error. See, e.g., United States v. Clark (No. 190), 2 CMR 107, decided February 29, 1952; United States v. Williams (No. 251), 2 CMR 137, decided March 14, 1952; United States v. Kubel (No. 229), 5 CMR 73, decided August 29, 1952. In the instant case we find that the evidence definitely and unequivocally raised the issue of the lesser included offense of assault and battery. Appendix 12, Manual for Courts-Martial, United States, 1951, page 540, affirmatively sets forth "assault" as one of the lesser included offenses of the principal offense of "robbery." The failure of the law officer in the case at bar to specifically instruct the court-martial as to the elements of assault, constituted prejudicial error and was not cured by the law officer's reference to Appendix 12, supra. As we said in United States v. Kubel, supra, where we discussed a similar question: "mere reference to the Manual will not suffice."

For the reasons stated, the decision of the board of review is reversed as to the specification of Charge II and the Charge. The decision as to the specification of Charge I and the Charge is affirmed. We note that the findings of guilty of Charge I and its specification will not support a punitive discharge or confinement in excess of three months, therefore, this case is remanded to The Judge Advocate General, United States Army, for return to the board of review for appropriate action not inconsistent with this opinion.

Judges LATIMER and BROSMAN concur.