UNITED STATES, Appellee

v

JUAN R. NORIEGA, Basic Airman, U. S. Air Force, Appellant

7 USCMA 196, 21 CMR 322

No. 8012

Decided June 29, 1956

*Captain Richard C. Bocken* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Stanley S. Butt.*

*Major Norman A. Faulkner* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis P. Murray* and *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A special court-martial convicted the accused of several offenses, in violation of the Uniform Code of Military Justice, and imposed a sentence which includes a bad-conduct discharge. Intermediate appellate authorities modified the findings of guilty, but affirmed the adjudged sentence. We granted review to consider whether the evidence is sufficient to support Charge I which alleges disrespect toward a superior officer.

Lieutenant Tipton, the transportation officer of the accused's squadron, called the enlisted personnel together for a "little briefing" in regard to a party for them. There is some disagreement as to the substance of the Lieutenant's talk. According to one witness, they were instructed to "go down and get drunk and have a good time"; another witness testified that they were told that they were "not to drink so much they couldn't control themselves and so forth." The Lieutenant himself did not testify. In any event, the party was held in the officer's club.

At the party, the Lieutenant appeared as the bartender. He worked stripped to the waist, and he served the beer as fast as he could. In the course of the evening the accused, who mixed whiskey with his beer, became aggressive and threatening. His conduct at this stage led to one of the other charges against him. Airmen Doster and Gibson thereupon started to take the accused to his barracks to keep him out of further trouble. However, they were stopped by Lieutenant Tipton and ordered to "Let him get a couple more drinks."

After a time the accused appeared at the bar. He raised his hands in a fighting pose and said, "Hey, Tip, let's fall out on the green." Lieutenant Tipton walked away without rejoinder.

Under Article 89, Uniform Code of Military Justice, 50 USC § 683, it is an offense for any person ▇ subject to the Uniform Code to behave "with disrespect toward his superior officer." In discussing the intendment of the Article, the Manual notes that "Disrespect by words may be conveyed by approbrious epithets or other contemptuous or denunciatory language. Disrespect by acts may be exhibited in a variety of modes—as neglecting the customary salute, by a marked disdain, indifference, insolence, impertinence, undue familiarity, or other rudeness in the presence of the superior officer." Manual for Courts-Martial, United States, 1951, paragraph 168.

It would seem that Lieutenant Tipton did not personally regard the accused's conduct or words as objectionable. He walked away without any remonstrance, and he did not appear at the trial to testify against the accused. Although not decisive, this is a circumstance to be considered with the others. These show that, in effect, the Lieutenant ordered the accused to get drunker than he was; he was stripped to the waist and served the drinks to the party participants as fast as he could. In appearance and in conduct, therefore, he was simply a bartender. Under these circumstances, the accused's comic opera John L. Sullivan stance and invitation to fall out "on the green" did not, as a matter of law, detract from the authority and the person of Lieutenant Tipton within the meaning of Article 89. Accordingly, the findings of guilty of Charge I and its specification are set aside and the charge is ordered dismissed.

The record of trial is returned to The Judge Advocate General of the Air Force for submission to a board of review for reassessment of a legal and appropriate sentence on the basis of the modified findings of guilty of specification 1, Charge II.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

In this case I find myself in complete disagreement with my associates over both the facts and the law ▇ of the case. If I read correctly what I can best describe as a short and underdeveloped majority opinion, this case is being reversed because the prosecution failed to establish, *as a matter of law*, that the accused's conduct and language were disrespectful. I had always supposed that, in order to establish the commission of that offense, it was enough to show conduct of a nature which could be regarded as disrespectful within the operation of a reasonable mind. Moreover, I have labored under a belief that on appeal this Court considers the evidence and inferences in a light favorable to the Government. Here, none of the evidence supporting the findings is related and apparently the record was read through spectacles which saw only evidence favorable to the accused. If I am not correct in the supposition and belief I mention above, then we have seriously erred in an almost countless number of cases.

Turning to the facts of the case, the majority opinion errs more in what it omits than in what it deigns to mention. The material facts are without substantial dispute. At 3:00 p.m. on the day in question, Lieutenant Tipton, an officer in charge of a transportation section, addressed the members of the squadron concerning an organization

party set for that day. The principal subject was the conduct expected of those who were to attend the impending entertainment. According to some of the witnesses, his instructions were to get drunk and have a good time, but not to wander about or leave the post. Others gave evidence to the effect that he informed the airmen they could have a good time, but not to consume so much beer that they could not control themselves. Shortly after the briefing, the festivities began at the Old Officers Club. The beer was free and was served without restraint. Lieutenant Tipton assisted in tending bar, and he performed that role without benefit of shirt or insignia of rank. Sometime during the course of the evening, the accused joined with other airmen and collectively they surreptitiously purchased a quantity of whiskey. After consuming far too much whiskey and beer, the accused became belligerent, abusive, and threatening. His first attempt to become embroiled in an altercation happened when he accosted a sergeant at the bar and, after insulting him with profane words, challenged the noncommissioned officer to go out on the green. The sergeant ignored the threat, but the accused was not to be deterred, and later made the sergeant the target of further abusive language, which included a threat to cut the sergeant's throat.

Subsequently, according to one witness, he and another airman started to return the accused to his barracks, but Lieutenant Tipton addressed them stating, "Don't touch him," "Let him get a couple more drinks." My associates accept that testimony as infallibly true but the second enlisted man denied having heard any such comment. Not long thereafter the accused turned on his alleged benefactor, for he appeared at the bar, assumed a fighting pose, sought to climb over the bar counter, and challenged the Lieutenant to do battle by saying, "Hey, Tip, let's fall out on the green." The Lieutenant, to avoid any difficulty, turned his back and walked away without saying anything.

The last scene before the curtain dropped brought the squadron commander on stage. He had been in attendance at the party, and witnessed the last part of accused's misbehavior, for upon its occurrence, he called the air police and ordered the accused locked up in the stockade overnight to put an end to his misconduct. When the accused was taken into custody, he stated, "If you throw me in jail tonight, tomorrow I will kill that . . . Major."

As to the offense in issue, the court made findings on all of the essential elements and there is ample evidence to support the verdict unless I can say, as a matter of law, that the accused was not disrespectful, or that the officer had so demeaned himself that there was no duty on the part of the accused to show respect to him. The Court chooses the first ground, but it is interesting to note that to support the conclusion reached, my associates, who are required to see the drama through the eyes and ears of witnesses, have substituted their judgment for that of those who were in a position to see, for the latter class testified that the conduct was disrespectful. Moreover, they rely largely on a single statement and ignore the demeanor so impressive to those who were present at the scene. Furthermore, I call attention to the fact that the drunken behavior of the accused followed a consistent course, and I fail to see in his conduct that friendly gesture my brothers label as the John L. Sullivan approach. The accused was charged and convicted of one offense of wrongfully communicating a threat against a sergeant and it was established beyond a reasonable doubt by the testimony. It preceded the commission of this crime. The findings of guilt were subsequently reduced by a board of review to that of a lesser included offense for instructional deficiencies, but the error had nothing to do with the sufficiency of the evidence to establish threatening and abusive language. The other crime of communicating a threat against the squadron commander was likewise adequately proven. It was subsequent to this episode, but it was disapproved by the convening authority because of an

alleged variance between the pleading and proof. Again, as to that instance, there is no question about the sufficiency of the evidence to show disrespect or the method employed by the accused to insult the officer. We, therefore, have this offense bracketed by similar incidents and there is no reason to suppose the attitude of the accused could have improved in the interim. I mention the two foregoing matters simply for the purpose of meeting the implied assertion that the conduct of the accused and his disrespect for authority can be brushed off as a "comic opera," or as the result of an invitation to become familiar with Lieutenant Tipton. Neither of the individuals involved in the two foregoing incidents, by words or acts, had encouraged the accused to get drunk or to become abusive, belligerent or disrespectful. His demeanor and attitude toward them demonstrated clearly that his mode of behavior, when under the influence of intoxicating liquor, was simply to be discourteous, disrespectful, and abusive to everybody or anybody, regardless of rank or position. If that conduct can be passed off as the playful antics of a squadron comic, then either I or my associates have a distorted sense of humor.

Paragraph 168, Manual for Courts-Martial, United States, 1951, at page 319, in a discussion of Article 89, supra, states:

"The disrespectful behavior contemplated by this article is such as detracts from the respect due to the authority and person of a superior officer. It may consist of acts or language, however expressed, and it is immaterial whether they refer to the superior as an officer or as a private individual."

As I view the contentions advanced by defense counsel, accused's line of defense has two prongs. It is argued that either his acts were not in and of themselves disrespectful, or that his conduct was within permissible limits because of Lieutenant Tipton's behavior. I will consider the arguments in the reverse order. I start with the premise that unless the officer misled the accused into believing that he had cast aside his cloak of superior authority and the accused was free to treat him with disdain, the challenge to fight detracted from the respect due the officer. The mere fact that the Lieutenant was not in the execution of his office at the time is of no material importance, as an officer is entitled to be respected on other occasions. Obviously, there can be occasions when an officer steps so far out of character that he is not entitled to the consideration due his rank and so, if this record disclosed that the Lieutenant had forfeited his right to be respected by the airmen present at the party, the accused's actions could not be made the basis for criminal prosecution. That rule, however, must be considered in connection with the necessities of the services. Certainly, one must bear in mind that a military service, as distinguished from the officer offended, has an interest in maintaining discipline, even at organization parties, and that individual members of the service cannot consent to the commission of crimes which undermine military discipline. Laying that policy aside, my reading of the record does not lead me to believe that the activities of the Lieutenant caused the celebration to degenerate into a barroom brawl where officers and noncommissioned officers were free targets for abuse, mistreatment, and threats from the accused.

To develop fully the activities of the officer who was the victim of this incident, I shall discuss in detail the three events in which he is alleged to have been the prime actor. First I should mention that for some reason unknown to me, he was not called as a witness. My associates seize upon that as a factor to be determined in weighing the guilt of this accused, but I pause to wonder why. Certainly, no presumption favorable to the accused can be indulged in from this meager record. For aught that appears, the officer may have been hostile to the prosecution, he may have been unfriendly to the accused, or he may have been neutral. Furthermore, whether he was alive, dead, or available, is un-

200

disclosed. If he was unavailable, his absence means nothing. If he was available, either side could have called him. If, as the Court contends, he walked away from the accused because he believed the accused was being funny, he would have been an excellent witness for the defense. He was not the accuser or complaining witness, and there is no contention made by the accused that the Government was concealing evidence unfavorable to the prosecution. So far as I acknowledge his absence as being a factor, it merely is a makeweight which is used by the Court to bolster up an assumed conclusion.

Passing on to more influential factors, Tipton, who commanded only a transportation section, ■ called the men of the squadron together for a briefing. He did not command this unit, and whether or not he appeared at the request of a senior commander does not appear, but, in all events, he made certain statements which are claimed to be of importance here. For my purposes, I am willing to select a defense witness' recollection of the statements although a thread of sage advice, namely, do not drink so much that you get into trouble, is found in the versions given by all the witnesses. This is his testimony:

"We were called there and told where and when the party was going to be. Lt. Tipton called us and he told us that we could have a good time and drink all we wanted to but not to leave the place and start any trouble or go off the base."

The next act of indiscretion performed by the Lieutenant was more or less continuous throughout the evening. Whether he volunteered or was acting under request from his immediate superior does not appear, but he assisted in dispensing the beer. He was working behind the bar, and he removed his shirt which carried his insignia of rank. So far as the record is concerned, it does not establish that he consumed any beer or intoxicating beverages or that he socialized with any of the airmen present. Those participants who were called to testify asserted that he did nothing to cause the accused or anyone else to be disrespectful. He did, however, on one occasion commit his third unwise act by going out of his way to assist the accused in remaining too near the source of supply. When the latter was being escorted from the club, according to the testimony of one of the two helpers, he directed that accused be permitted to remain and enjoy the refreshments. I could, of course, suggest that the court-martial members were at liberty to believe that no such statement was made, and if they so concluded, another makeweight relied on by the Court to support its position is demolished.

I do not seek to justify the judgment of the Lieutenant, but in order to determine whether he had forfeited his right to be treated as an officer, I must view the entire drama and the effect of his asserted indiscretion on all members of the squadron. No doubt beer, liquor, and familiarity breed contempt, but here there was no evidence that he indulged in any one of the three. He was carrying out the duties of a bartender, and apparently centered his attentions on his task. A squadron consists of many airmen, and while I do not know how many attended, I know three officers were present and I assume at least one of them, the squadron commander, was there for supervisory purposes. What degree of order he maintained among the bulk of his command is buried outside the record, but from available information the accused alone became incorrigible and unmanageable, and when he insulted the Lieutenant he was hustled off to the stockade. Certainly the record shows no reason for him to become incensed at any of the persons he selected for his abuse. From all that appears, he was the only person present who did not understand that he must comply with the rules of the military community. He does not contend to the contrary, and other witnesses asserted that the officer cautioned all the airmen about the standard of behavior expected of them and warned them not to consume so much beer that they would lose control of themselves and get into trouble.

**201**

In all probability, had the accused not indulged in the extracurricular activity of consuming hard liquor, which was not contemplated by the squadron officers, and apparently imported without their knowledge, he could have complied with the instructions and avoided his present dilemma.

I disapprove of an officer becoming a bartender, but I would not go so far as to hold that Tipton removed himself from the role of an officer merely because he shed his shirt and acted in that capacity. Obviously, it would be infinitely better if officers would not engage in those labors when beer is being served, but at many organization functions, the officers perform menial tasks to free the enlisted men for the party. That act alone would make considerable difference if there was any question about accused's knowledge that Tipton was an officer, but there is none, and he seems to have been the only airman present who concluded he had the right to treat the officer with contempt. Others present seem to have respected the authority and dignity of the Lieutenant's commission, and the accused never claimed that he challenged the officer because the latter had led him to believe he had removed himself from the ranks of the commissioned class. The only contention advanced by the accused was that he was so drunk he did not remember what he said or did.

Finally, if I accept the majority view that Tipton aided the accused in remaining at the party, I must assess its importance in destroying the officer-enlisted man relationship. I have a great deal of difficulty in finding that an act which was intended to be friendly can be converted into an invitation to be threatened. Undoubtedly the Lieutenant's act made it possible for the accused to further impair his mental faculties and increase his degree of intoxication. However, if two soldiers were needed to get the accused to leave the party, what assurance do we have that he would have departed and remained away? More important, there is no showing, or even as much as a suggestion, that the officer was an inten-

tional accessory to accused's mentally confused state. It quite often happens that defense counsel seek to try some one other than the accused, and here my associates seem to join in that pastime. However, it should be realized that the party was held for the benefit of the enlisted men, and the officer may have been doing no more than affording the accused a chance to remain with his companions. Assuming that he erred, the accused has a duty imposed upon him to comply with military standards while a member of the armed forces. He became voluntarily intoxicated, and he can blame no one but himself for that condition. If he was invited to drink beer, he was not solicited by the officer to consume whiskey. He sought to avoid the legal consequences of his misbehavior by pleading and fully exploiting the defense of alcoholic amnesia, but he lost on that issue. Therefore, I am not willing to overturn the verdict on a theory that the officer victim had reduced himself to a participant in a barroom brawl.

My associates just summarily state that the facts they mention fail to establish disrespect as a matter of law. Aside from marshalling only the evidence favorable to the accused, they pay scant heed to the opinions of those who witnessed the incident and the findings of two legal bodies who have the duty and the power to judge the facts. Practically all witnesses described the acts of the accused as being disrespectful, and when the manner and method in which he had addressed similar remarks to other superiors is taken into consideration, it becomes certain that the triers of fact had adequate support for their findings. According to those members of the squadron who expressed an opinion, the accused was not a playful drunk who was merely a prankster. They considered his behavior as offending against the respect due the officer, but not so with my associates, for they find the record to illustrate a comical pose which they liken to the oft-printed picture of John L. Sullivan. That hyperbole is a figment of someone's imagination for, as I interpret the record, there

is good reason to visualize the accused as displaying the scowl and ferocity of Jack Dempsey. At least he, in his avid desire to "play" with the officer, sought to get over the counter and his squaring away was so noticeable and shocking that the commanding officer forthwith called the air police. Of course, the officer turned his back and walked away. Perhaps he was trying to avoid having to fight with an enlisted man or, probably more to the point, he was again too lenient with the accused by seeking to conceal that which was apparent to everyone else. The words used by the accused can easily be interpreted as an invitation to do battle, and if a reasonable court-martial member could conclude they were uttered in seriousness, the Government has carried its burden. Perhaps the Court has overlooked the fact that we have held that an offer by an enlisted man to fight an officer is disrespectful per se. I quote from our opinion in United States v Richardson, 2 USCMA 88, 6 CMR 88, where we spoke through Judge Quinn and said:

". . . An examination of the service cases leaves no doubt that in military law threatening language to a military superior (such as this offer to fight) is per se, disrespect. . . . in view of the weight of authority and well-established military precedent, we have no alternative but to find that the words as used by the accused in this tempest teapot situation were disrespectful per se."

It may well be that the court-martial members could have found the acts not to be disrespectful. However, they did not do so, and I would suggest they based their finding on the testimony of witnesses who were in a position to know. When those who are not unfriendly to an accused are convinced that his conduct is threatening, abusive, and disrespectful, I am not inclined to say at this level that they did not know what they were saying. Furthermore, I find there is evidence to support the findings of the two fact-finding agencies and I am not disposed to say they erred as a matter of law. I would affirm the decision of the board of review.