**UNITED STATES, Appellee,**

v.

**Private E–1 Curtis E. PRATCHER, SSN 413–13–2912, United States Army, Appellant.**

**SPCM 17001.**

U. S. Army Court of Military Review.

28 Oct. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Joyce E. Plaut, JAGC, and Captain James A. McAtamney, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, Captain Mark S. Julius, JAGC, and Captain Michael R. Smythers, JAGC, were on the pleadings for appellee.

Before MELNICK, McKAY and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

McKAY, Judge:

This case is before the Court for mandatory review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976) (hereinafter UCMJ). The appellant, Private Pratcher, was convicted by a special court-martial of four specifications of disrespect toward his superior commissioned officer (Charge I) in violation of Article 89, UCMJ, 10 U.S.C. § 889 [1], and willful disobedience of a lawful command of the same officer (Charge II) in violation of Article 90, UCMJ. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for four months and forfeiture of $350 pay per month for four months. Several assertions of error are now made by the appellant. In our opinion, however, only the issues of multiplicity of the charges, the failure of the military judge to make special findings as requested, and the defense of divestment of office warrant discussion.

With respect to the issue of multiplicity, we note first that the military judge determined all the charges were multiplicious for

---

1. Specification 4 of this Charge alleged an "offer of violence" against the lieutenant by the appellant's balling up of his fists and challenging him to a fight. The military judge allowed the Government to proceed on this specification on its theory that this was a disrespect by act. Under this theory the maximum sentence was less than that authorized had the specification been alleged as an offer of violence under Article 90, UCMJ, 10 U.S.C. § 890.

sentencing. The appellant now asserts that the four specifications of Charge I (disrespect) are multiplicious for findings with Charge II (willful disobedience). We hold that three of the specifications of Charge I are multiplicious for findings.

All charges in this case arose as a result of the appellant's conduct during a thirty to forty-five minute period on 7 August 1981. The episode was coincident to the repossession of his personal automobile. Prior to 7 August, Lieutenant Bannister, the appellant's platoon leader and the victim in the charges, received several complaints from a Mr. DeYoung concerning the failure of Pratcher to pay a repair bill on his car. Eventually, on 6 August, Lieutenant Bannister informed Mr. DeYoung that Private Pratcher had received an Article 15, UCMJ, punishment and probably could not pay the debt; Mr. DeYoung stated that he would send a wrecker "down to repossess the car". In the meantime, Captain Wisda, the company commander, ordered Pratcher to turn over to him the keys to his car because of Pratcher's involvement in an unrelated matter. On the morning of 7 August, Wisda gave the keys to Bannister, who turned them over to the wrecker driver. Pratcher never consented to Bannister's release of his keys, and Bannister apparently never investigated the validity of the indebtedness claim, or ascertained the proper legal or the installation procedural requirements for repossessing private property.[2] Moreover, he was unaware of Army policy on handling indebtedness complaints and did not follow the established regulatory procedure.

■ The appellant first learned of the intended repossession on the morning of 7 August, and not surprisingly he became upset and angry when Lieutenant Bannister so informed him. This occurred in front of the unit "S & A Building" where the lieutenant attempted to counsel the appellant on his indebtedness problem, and to explain to him why the car was being repossessed and that he should try to work out a repayment schedule. With the explanation the appellant became angrier, he put his face close to that of the lieutenant and shouted numerous obscenities. The lieutenant moved back and the appellant closed in. This went on for several minutes and the appellant then balled his fists and challenged the lieutenant to a fight. The lieutenant declined the invitation and testified he tried to calm down the appellant. The appellant then turned away and started inside the "S & A Building". The lieutenant gave him an order to "stand fast", at least twice. The appellant continued inside and the lieutenant followed "and began to counsel him again". The appellant was obviously not receptive to such counsel at the time as he again placed his face close to that of the lieutenant, again invited him to fight and again spoke a few obscenities. In our opinion this confrontation was one continuing episode, unnecessarily prolonged by the lieutenant, and from which two offenses were charged in four specifications of disrespect and one disobedience of an order. We will take corrective action by approving only one specification of disrespect in Charge I and the disobedience of an order (Charge II), which we find to be a separate offense because the disobedience alleged, failure to stand fast, did not embrace the disrespectful language uttered by the appellant. *See United States v. Smith,* 12 M.J. 654 (A.C.M.R.1981), *pet. denied,* 13 M.J. 120 (C.M.A.1982).

■ To say that Lieutenant Bannister used poor judgment in the way he handled his confrontation with the appellant is to understate the matter. Be that as it may, we do not find, as the appellant asserts, that by his conduct Lieutenant Bannister divested himself of his office, or detracted from his authority as a commissioned officer. *See United States v. Noriega,* 7 U.S.C. M.A. 196, 21 C.M.R. 322 (1956); *United States v. Johnson,* 43 C.M.R. 604 (A.C.M.R. 1970). Mere incompetence or poor judg-

2. We restrain ourselves from gratuitous comments upon the manner in which the officer in this case handled the indebtedness matter from a leadership, property right or privacy standpoint. We are confident that his superior authorities will take appropriate action.

ment does not divest an officer of his office where his actions have a military purpose. *United States v. McDaniel,* 7 M.J. 522 (A.C. M.R.1979). That purpose in this case was to resolve the indebtedness complaint against a member of the unit, and to counsel the appellant on his financial mismanagement and its consequences.

■ Turning to the issue of special findings, the record establishes that before announcing general findings, and on his own initiative, the military judge entered special findings on the defense of whether Lieutenant Bannister had divested himself of the protection of his office. Approximately thirty minutes afterwards, the trial defense counsel first made a request for additional special findings. The military judge ruled this request for additional findings was untimely and denied the request. The appellant now contends the military judge erred by his refusal to give the requested findings and asks the Court to set aside the action of the convening authority and remand the record of trial to the military judge for preparation of special findings. We disagree.

Article 51(d), UCMJ, 10 U.S.C. § 851(d), states in part that, "The military judge of [a court-martial composed of a military judge alone] shall make a general finding and shall in addition on request find the facts specially". As no time for requesting special findings is specified in Article 51(d), the appellant's contention raises the issue of when an accused must make his request in order to be timely.

When enacting Article 51(d), Congress used the identical language, excepting a formal difference necessary to adapt it to courts-martial, of the then existing provisions of Rule 23(c), Federal Rules of Criminal Procedure. It appears obvious therefore that "Congress intended to adopt for military justice the special findings requirements applicable to criminal trials by judge alone in the Federal District Courts". *United States v. Gerard,* 11 M.J. 440, 442 (C.M.A.1981) (Everett, Chief Judge, concurring). Until amended in 1977, no time was specified in Rule 23(c) within which a de-

fendant had to make a request for special findings and it was unclear when a request had to be made, *United States v. Rivera,* 444 F.2d 136 (2d Cir.1971). The question was decided on an *ad hoc* basis. *See Benchwick v. United States,* 297 F.2d 330 (9th Cir.1961); *United States v. Morris,* 263 F.2d 594 (7th Cir.1959). In 1977 the rule was amended to require the request to be made before general findings are announced and to authorize oral requests. Before this amendment the leading federal court case held that a request for findings of fact made immediately after the announcement of general findings was timely. *United States v. Morris, supra.*

Until 1981, there appeared to be no question in military practice on the time requirement for requesting special findings because the President in implementing Article 51, also promulgated paragraph 74i, Manual for Courts-Martial, United States, 1969 (Revised edition) (hereinafter MCM, 1969). Included in paragraph 74i are provisions specifying that "A request for special findings must be made prior to the announcement of general findings", and authorizing a military judge to require the request to be submitted in writing. In *United States v. Gerard, supra,* however, the Court of Military Appeals reversed a ruling of a trial judge who denied the accused's request for special findings because the required "written request for special findings was not submitted in a timely fashion". The trial judge in that case had relied upon paragraph 74i in denying the request. In reversing the Court held that a failure by an accused to comply with the provisions of paragraph 74i "does not obviate the military judge's statutory responsibility to make the special findings when required". *Gerard,* 11 M.J. at 442. While it appears that in *Gerard* the Court was concerned primarily with the fact that the trial judge had required the defense to prepare the specific matter to be determined in writing, its holding is that to the extent that paragraph 74i, MCM, 1969, is inconsistent with or contrary to the express language of Article 51(d), UCMJ, the language

of Article 51(d) will control. Article 51(d) neither specifically requires the request to be in writing or to be made by a certain time.

■ We do not believe that the requirement of paragraph 74i, MCM, 1969, that a request for special findings must be made before general findings are announced, is inconsistent with or contrary to Article 51(d), UCMJ. As Chief Judge Everett pointed out in *Gerard,* Congress obviously modeled Article 51 on Rule 23(c), Federal Rules of Criminal Procedure. At that time, Rule 23(c) contained no provisions stating when a request must be made or whether it must be oral or written. With the benefit of the 1977 change to Rule 23(c), clearly setting out the intent of the Supreme Court and Congress with respect to the time and manner of making requests for special findings, we believe there would be little disagreement with the holding in *Gerard*—that a military judge is not authorized to refuse to provide special findings because of a failure to submit a written request specifying the matter to be determined. Congress "did not leave the President free to condition the accused's right to special findings on his counsel's specifying 'the matter to be determined'". *Gerard* at 443 (Everett, Chief Judge, concurring). *See United States v. Hussey,* 1 M.J. 804 (A.F.C.M.R. 1976).

On the other hand, there has never been any question but that a request for special findings must be timely. *Gerard* at 441; *United States v. Morris, supra; see United States v. Hussey, supra.* After all, no one could dispute that a request made five years after the sentence was announced would be untimely. We believe the 1977 amendment to Rule 23(c) reflects the intent of the Supreme Court and Congress in this respect at the time both Rule 23(c) and Article 51(d) were originally formulated. The President therefore correctly included the requirement in paragraph 74i, MCM, 1969, that a request for special findings

must be made before general findings are announced. Accordingly, we hold that the military judge was not in error when he denied the appellant's request for special findings in this case.

We have considered the other matters raised by the appellant and find them to be without merit.

For the reasons stated, the findings of guilty of Specifications 2, 3 and 4, Charge I, are set aside and dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, only so much of the sentence as provides for a bad-conduct discharge, confinement for four months and forfeiture of $350 pay per month for two months is affirmed.

Judge LEWIS concurs.

MELNICK, Senior Judge, concurring in part and dissenting in part:

I agree with the majority as to multiplicity and the absence of any requirement for special findings here. I dissent as to their disposition of this case.

It appears from the record that Lieutenant Bannister, and perhaps Captain Wisda, converted appellant's automobile by turning it over to an alleged creditor with no apparent authority. Appellant's unfortunate reaction to this situation and encounter with Lieutenant Bannister is the basis for his court-martial. It is an element in two issues in this case, sentence appropriateness and Lieutenant Bannister's possible abandonment of his office. Unfortunately, the Staff Judge Advocate here chose to ignore the matter and did not mention it to the convening authority either on the merits in connection with the issue of Lieutenant Bannister's abandonment of his office or in his clemency discussion. Indeed, he never mentioned the abandonment of office issue at all.* In my view, his review is fatally deficient. The Staff Judge Advocate's omission pertained to critical issues which

---

* Based on this omission, I see no reason to assume that Lieutenant Bannister's conduct

was corrected by his superiors.

should have been brought to the convening authority's attention. While the defense counsel did not object to these deficiencies when he examined the Staff Judge Advocate's review, I believe that in the context of this case, these issues are too important to invoke waiver. *United States v. Thorpe,* 3 M.J. 704 (A.C.M.R.1977); *United States v. Veney,* 6 M.J. 794 (A.C.M.R.1978).

I would return this case for a new and complete review.