388

UNITED STATES, Appellee,

v.

Curtis E. PRATCHER, Private, U.S. Army, Appellant.

No. 45,375.
SPCM 17001.

U.S. Court of Military Appeals.

April 30, 1984.

For Appellant: *Captain Peter L. Yee* (argued); *Colonel William G. Eckhardt, Captain James A. McAtamney* (on brief); *Major Robert C. Rhodes.*

For Appellee: *Captain Diana Moore Brown* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Major Michael R. Smythers* (on brief); *Major Thomas J. Leclair.*

*Opinion of the Court*

FLETCHER, Judge:

We granted review of appellant's special court-martial,\* to consider whether his superior officer's actions divested the same of the right to be respected, thereby rendering null appellant's approved disrespect conviction. 15 M.J. 379 (1983). While we conclude that the officer's involvement with appellant's creditor was inappropriate and in violation of an Army regulation, we are unable to conclude that such conduct rose to the level of divestment of the right to respect. We turn, first, to the particular facts.

Appellant complains about his First Lieutenant's apparent extensive involvement with his creditor. The record shows that prior to the offense on August 7, 1981, First Lieutenant James Bannister received three complaints about appellant's failure to pay

---

\* On November 16, 1981, appellant was tried by a military judge sitting as a special court-martial at Fort Carson, Colorado. Contrary to his pleas, appellant was convicted of four specifications of disrespect to a superior commissioned officer (*see* 14 M.J. 819, 820 n.1), and willful disobedience of the lawful command of a superior commissioned officer, in violation of Articles 89 and 90, Uniform Code of Military Justice, 10 U.S.C. §§ 889 and 890, respectively. The convening authority approved the ad-

judged sentence of a bad-conduct discharge, confinement for 4 months, and forfeiture of $350.00 pay per month for 4 months. The United States Army Court of Military Review set aside and dismissed specifications 2, 3, and 4 of Charge I (all disrespect offenses), and affirmed the remaining findings of guilty and only so much of the sentence as provided for a bad-conduct discharge, confinement for 4 months, and forfeiture of $350.00 pay per month for 2 months. 14 M.J. 819 (1982).

$200 of a $300 car-repair bill. Each time First Lieutenant Bannister counseled appellant who said he would take care of the claim. The commander had obtained appellant's car keys regarding another matter, and when appellant requested them, First Lieutenant Bannister intervened and was given them. Bannister then informed appellant that DeYoung, the creditor, was repossessing his car.

First Lieutenant Bannister, appellant, and Private Cornelia Wake went outside where the conversation between First Lieutenant Bannister and appellant became heated—appellant used profane language and offered to fight First Lieutenant Bannister. In contrast, First Lieutenant Bannister refused and did not return the obscenities, according to Private Wake. Appellant, nevertheless, did address First Lieutenant Bannister as "Sir," while First Lieutenant Bannister's tone and demeanor were identical to appellant's, although he did not use profanity.

First Lieutenant Bannister testified that he never directed anyone to pick up the car, although it apparently was repossessed during the confrontation. He further stated that he was unaware of any Army regulation on point and was merely protecting the military community's reputation.

It is apparent that First Lieutenant Bannister's ignorance of military management forced this situation into a confrontation, resulting in resolution within the military justice system, an outcome as unnecessary as it is inefficient. Army Management Policy made mandatory by paragraph 1–4, Department of the Army Regulation 600–15, *Personnel-General: Indebtedness of Military Personnel* (15 Nov. 1979) [hereinafter cited as AR 600–15] states:

> *Policy a.* Soldiers must conduct their private affairs satisfactorily and must pay their debts promptly. The Army, however, has no legal authority to force soldiers to pay their debts; nor can the Army divert any part of their pay even though payment of the debt was decreed

by a civil court. Only civil courts can enforce payment of private debts . . . .

> \* \* \* \* \* \*

> *e.* The Army does not attempt to judge or settle disputed debts, or admit or deny whether complaints are valid. In no case will the Army tell complainants whether any adverse action has been taken against a soldier as a result of the complaint.

We are confronted here with an accused subjected to the spectacle of his superior officer, apparently in concert with the towing company—and in clear violation of an Army regulation—repossessing his personal property with no colorable right to do so. Nevertheless, in spite of management ineptitude, when seen in light of the foregoing regulation, we are legally compelled to consider a precise question. Did First Lieutenant Bannister's actions, properly seen from appellant's point of view, deprive him of the protection of his rank and his position of authority? *United States v. Struckman*, 20 U.S.C.M.A. 493, 43 C.M.R. 333 (1971). We have never reviewed an analogous fact situation. Divestment occurred in *Struckman* when the officer victim invited the accused to fight. In *United States v. Noriega*, 7 U.S.C.M.A. 196, 21 C.M.R. 322 (1956), where an officer served as a bartender for enlisted personnel, the action of appellant did not detract from the officer's divested right to authority and was not disrespect.

We cannot conclude from the facts of record, as illustrated, that the actions of appellant's superior rose to such a level. The improper involvement of First Lieutenant Bannister in debt collection did not divest him of the protection of his rank, and his position of authority.

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring):

Although Lieutenant Bannister may have violated Army regulations, he was not off on a complete "frolic of his own." As a platoon leader, Bannister had a legitimate concern that the members of his unit "pay

their debts promptly," as prescribed by Army policy. *See* para. 1–4a, Department of the Army Regulation 600–15, Personnel-General: Indebtedness of Military Personnel (15 Nov. 1979). Indeed, dishonorable failure by a servicemember to pay his debts can be prosecuted under Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934, *see* Form Specification 138, App. 6c, Manual for Courts-Martial, United States, 1969 (Revised edition); and the punishment for this offense may be severe, *see* Table of Maximum Punishments, para. 127c, Manual, *supra.\** While the means that Bannister

---

\* This provision of the 1969 Manual authorizes a punishment including a bad-conduct discharge and 6 months' confinement. The 1951 Manual authorized an even harsher penalty—dishonorable discharge and 6 months' confinement, *see* para. 127c, Manual for Courts-Martial, United States, 1951.

used may have been inappropriate, he was nonetheless seeking to perform his duties as appellant's superior officer at the time of the alleged offense; and so he was not divested of his right to be treated with respect by appellant.

COOK, Judge (concurring with exceptions):

I concur in the principal opinion, with the exception that I view the gravamen of Lieutenant Bannister's conduct more along the lines expressed by Chief Judge Everett in his concurring opinion.