**UNITED STATES, Appellee,**

v.

**Jeffrey T. KING, 234–21–5336 (A person in the custody of the Armed Forces serving a sentence imposed by court-martial), United States Army, Appellant.**

**ACMR 8801441.**

U.S. Army Court of Military Review.

20 Nov. 1989.

dio.

For Appellant: Captain Thomas A. Sieg, JAGC, Captain Alan M. Boyd, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Maria C. Fernandez, JAGC, Captain Clay E. Donnigan, JAGC (on brief).

### OPINION OF THE COURT

NEURAUTER, Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officers of failure to obey a lawful order and assault upon a person in execution of law enforcement duties, violations of Articles 92 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of confinement for eighteen months.

Appellant was confined to the Maximum Security Area (MSA) of the United States Disciplinary Barracks (USDB) at the time the events transpired which led to his conviction for these offenses. SSG B, a guard at the USDB, was in the process of escorting the appellant from his cell to the show-

. er area. After observing several unauthorized magazines on the floor, SSG B ordered appellant to put them into appellant's wall locker. Appellant became upset and refused to comply with the order. Words were exchanged between the two and appellant approached SSG B and began yelling at and taunting the guard.

Subsequently, SSG B called for assistance using his hand-held radio. Two other guards, SGT J and SGT K, responded very quickly. After positioning himself between appellant and SSG B and upon believing that the situation had improved, SGT J bent down to pick up appellant's shower articles. At that time, appellant lunged toward SSG B, struck him, and knocked SSG B back into a set of lockers. SSG B, in response, and while being pushed by appellant, struck appellant in the head with the radio. Appellant received a cut on his head requiring twelve stitches. SSG B apparently was not injured.

■ On appeal, appellant alleges that the government failed to prove beyond a reasonable doubt that the victim of the assault offense, SSG B, did not abandon his status as a law enforcement officer acting in the execution of his duties. On this issue, the military judge gave the following instruction:

The evidence has raised an issue as to whether Sergeant B conducted himself prior to the charged assault in a manner which took away his status as a person acting in the execution of police or law enforcement duties. A law enforcement person whose own language and or conduct under all the circumstances departs substantially from the required standards appropriate for that law enforcement person's position under similar circumstances is considered to have abandoned that rank and position. In determining this issue, you must consider all relevant facts and circumstances that you have heard from the testimony of the eye witnesses down there. You may find the accused guilty of assault and battery on a law enforcement officer only if you are satisfied beyond a reasonable doubt that Sergeant B, by his conduct and language, did not abandon his status as a law enforcement person acting in the execution of his duties.

This instruction clearly informed the court members of the well-established principle that a superior noncommissioned officer may, as a result of misconduct on his part, abandon his rank and position of authority. *United States v. Allen*, 10 M.J. 576, 577 (A.C.M.R.1980) citing *United States v. Noriega*, 21 C.M.R. 322 (1956).

In examining the particular facts of this case to resolve the issue of divestiture, two issues must be addressed. *Id.* at 578. First, did SSG B, by his words or actions, step outside his position? Second, did SSG B's conduct invite or provoke the appellant's offenses? We answer both these questions in the negative. Based on a careful examination of the entire record, we are satisfied, beyond a reasonable doubt, that SSG did not divest himself of his position and status as a law enforcement officer. His conduct, during the entire incident, remained well within those bounds and thus we concur with the findings of the court.

■ Appellant next asserts that the military judge erred in allowing testimony, during the presentencing phase of the trial, that appellant had appeared before nineteen Disciplinary and Adjustment Boards during his incarceration at the USDB. Appellant maintains that this testimony, elicited by trial counsel on direct examination of his witness in aggravation, is an improper inquiry into specific instances of conduct under Manual for Court–Martial, United States 1984, Rules for Courts–Martial 1001(b)(5) [hereinafter R.C.M.].

R.C.M 1001(b)(5) states as follows: The trial counsel may present, by testimony ..., evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. On cross-examination, inquiry is allowable into relevant and specific instances of conduct.

Prior to the government's case in aggravation, trial defense counsel objected to the testimony of MAJ K based upon defense counsel's understanding of what that wit-

ness would say. The defense anticipated that the witness would offer his opinion concerning appellant's potential for rehabilitation. Specifically, trial defense counsel objected stating that MAJ K had no personal knowledge of the appellant, had never met him, and would base the opinion only on the witness' review of appellant's records at the USDB. In response, the trial counsel stated that MAJ K was the executive officer for the Directorate of Custody and it was his duty to "keep track" of the inmates, thus he would be competent to render such an opinion.

When called, MAJ K testified that, as the senior correctional officer, he must be certain that inmates at the USDB are confined in accordance with applicable rules and regulations. He further stated that appellant had been in maximum custody for substantially all of his two years at the USDB. Defense counsel then objected to any elaboration on the reasons for this extended period of maximum custody. The military judge overruled the objection and MAJ K proceeded to testify that the primary tool for disciplining inmates is the Discipline and Adjustment Board (D and A Board), that this board provides for administrative due process, it determines the inmate's guilt or innocence of the alleged offense or violation of the rules and makes a recommendation concerning the appropriate disciplinary or corrective action to be taken. The Commandant, USDB, then takes final action on the matter. According to MAJ K, D and A Board recommendations may run a full range from a verbal reprimand to recommendation for trial by court-martial.

When trial counsel asked MAJ K how many D and A Boards the appellant had appeared before, trial defense counsel again objected, this time on the basis that the witness would testify concerning specific incidents of misconduct by the appellant. Trial counsel responded that no evidence of specific acts would be presented and that the information solicited was "very pertinent to a person's rehabilitative

potential." The military judge overruled this objection and the witness stated that the appellant had appeared before nineteen D and A Boards, that this was an unusually high number, and that this was the reason for appellant's long tenure in maximum custody. In conclusion, when asked to give his opinion concerning appellant's rehabilitative potential, MAJ K testified as follows: "I don't believe he (the appellant) will ever be a law-abiding, tax-paying, productive citizen."

In terms of the maximum permissible punishment, the case before us is somewhat unique. The appellant's punitive discharge, adjudged by a previous court-martial, had been executed. As a result, the maximum punishment in this case, as instructed by the military judge, was confinement for three years and six months. Forfeitures, discharge, and reduction were not punishments for consideration by the members. Apparently in an effort to tailor the case in aggravation to this situation, trial counsel sought to present to the members, to the extent possible, information concerning the appellant's character and performance as an inmate, but the manner she chose focused in on several incidents of "misconduct."

We conclude that MAJ K's testimony pertaining to appellant's appearances before nineteen D and A Boards was inadmissible and resulted in consideration by the panel of purported specific instances of conduct by the appellant.[1] See United States v. Fontenot, 29 M.J. 244, 248 n. 3 (C.M.A.1989); United States v. Wingart, 27 M.J. 128 (C.M.A.1988). It does not matter that the "misconduct" was not described further, or the description was merely that appellant appeared before nineteen boards. Due to the limited evidence presented during the sentencing phase, both in aggravation and extenuation and mitigation, we cannot conclude, beyond a reasonable doubt, that the error was harmless.

---

1. The witness did not testify about why appellant appeared before the D and A Boards or what recommendations were made by those boards. In addition, the government did not attempt to introduce other evidence concerning these proceedings, such as official records maintained by the United States Disciplinary Barracks.

The findings of guilty are affirmed. The sentence is set aside. The same or a different convening authority may order a rehearing on the sentence only.

Senior Judge KANE and Judge GILLEY concur.